**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

ROSCOE ROCK AND SAND INC.,

           Plaintiff,

    v.

**INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL
150, AFL-CIO,**

           Defendant.

No.  08-cv-4091

Hon. Judge Hart
Magistrate Judge Mason

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION TO STAY ARBITRATION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, Roscoe Rock and Sand, Inc. ("Roscoe"), by its attorneys, respectfully moves that the Court, following a hearing, issue a Preliminary Injunction, to protect Plaintiff from Defendant's improper attempt to force Roscoe to arbitrate a grievance under a collective bargaining agreement to which it is not a party, and under which it has no contractual obligations.  Plaintiff requests that the Court order the following relief:

1. Enjoin Defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), and any other labor organization or entity who might attempt to bind Roscoe to arbitration, from filing any action or motion to compel arbitration, and from scheduling an arbitration hearing, until such time as the court has decided the Plaintiff's pending Petition for Declaratory Judgment.

2. Enjoin the American Arbitration Association, and Arbitrator Steven M. Bierig, from scheduling a hearing date for arbitration of any grievance brought by Local 150 against Plaintiff, from issuing any subpoena in such a grievance, and from adjudicating these grievances, until such time as the court has determined whether Roscoe is bound to the Northern Illinois Material Producers' Association ("NIMPA") Collective Bargaining Agreement ("CBA" or "Agreement") between Local 150 and Illinois Mining Corporation.

3. Any, and all other relief that the Court may deem necessary.

This Motion is based upon Plaintiff's Complaint with Petition for a Declaratory Judgment and Motion for Permanent Injunction to Stay Arbitration, the Memorandum in Support of this Motion for a Preliminary Injunction which follows, and the attachments thereto.   Plaintiff respectfully requests that the Court schedule such hearings as are necessary to resolve the instant Motion for Preliminary Injunction on the earliest available date.

Respectfully submitted,

ROSCOE ROCK AND SAND, INC.

/s/ Frederick L. Schwartz
One of Its Attorneys

Frederick L. Schwartz (#06204341)
Alan A. Satyr (#6238021)
LITTLER MENDELSON
A Professional Corporation
200 N. LaSalle Street
Suite 2900
Chicago, IL  60601
312.372.5520

*Attorneys for the Plaintiff*

Dated: July 23, 2008

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing has been served on the following by electronic

mail and facsimile, on July 23, 2008:

Bryan Diemer, Counsel for Defendant
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL 60525
E-mail: bdiemer@local150.org
Fax: (708) 588-1647

Respectfully submitted,

    /s/  Frederick L. Schwartz
        Frederick L. Schwartz (#06204341)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**ROSCOE ROCK AND SAND INC.,**

Plaintiff,

v.

**INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL
150, AFL-CIO,**

Defendant.

No.  08-cv-4091

Hon. Judge Hart
Magistrate Judge Mason

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION TO STAY ARBITRATION

**I.    INTRODUCTION**

Plaintiff, Roscoe Rock and Sand, Inc. ("Roscoe"), seeks a Preliminary Injunction for the purposes of enjoining Defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") in its efforts to force Roscoe to arbitrate a grievance under a collective bargaining agreement to which it is not a party and under which it has no contractual obligations. Indeed, Local 150, by improperly and frivolously filing a baseless grievance against Roscoe, is seeking to bind Roscoe, an unrelated third-party, to the terms and obligations of its Collective Bargaining Agreement ("CBA" or "Agreement") with Illinois Mining Corporation ("Illinois Mining"). (*See* Exhibit A.)

Submission of the alleged grievance to arbitration, before the court has had the chance to determine the existence — or lack thereof — of a contractual duty to arbitrate, will illegally force Roscoe, a non-signatory to the CBA and the grievance procedures therein, to sacrifice its right to a judicial forum, in violation of its constitutional right to Due Process. Submission of the grievance to arbitration also gives rise to the potential for the arbitrator to hear the case on the

merits and issue an adverse ruling, from which there are only limited grounds to challenge the ruling, and a truncated timeframe in which to do so. *See Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996) (applying a 90 day time period in which to challenge arbitration awards); *Monee Nursery & Landscaping Co. v. IUOE, Local 150*, 348 F.3d 671, 675 (7th Cir. 2003) (recognizing the extremely limited grounds upon which a court can review an arbitration award).

Accordingly, Roscoe seeks a Preliminary Injunction to stay the arbitration proceedings of Arbitrator Steven M. Bierig, or any other arbitrator assigned to the matter, and enjoin Local 150 from seeking an arbitration hearing in order to adjudicate the grievance, until such time that this Court has heard the accompanying Motion for a Declaratory Judgment, and has deemed the grievance to be arbitrable. In support of this Motion, Roscoe states as follows:

## II.  RELEVANT FACTS

### A.    Local 150's Failed Attempt to Organize Roscoe's Employees

Roscoe is a non-union construction company in the business of, among other things, supplying aggregate stone. Local 150 attempted to organize and represent Roscoe's employees for the purposes of collective bargaining, but failed do so. The National Labor Relations Board ("NLRB") conducted a duly authorized election and certified the election results on March 20, 2002. (Pl.'s Aff. ¶ 7; Pl.'s Aff. Ex. 1; Exhibit B.) A tally of the ballots revealed that a majority of the voting employees did not select Local 150 to be their bargaining representative. Because Local 150 has never been selected by a majority of Roscoe's employees to be their bargaining representative, Local 150 has no legal right to file any grievances or to engage in any form of collective bargaining on their behalf.

### B.    Roscoe's Lease Agreement with Illinois Mining

In 2007, Roscoe entered into a leasing agreement (the "Lease Agreement"), to lease a small quarry from Illinois Mining Corporation, located on Pieper Road in Durand, Illinois

("Quarry").  (Pl.'s Aff. ¶ 10; Pl.'s Aff. Ex. 4; Exhibit C.)  Illinois Mining is signatory with Local

150 to the Northern Illinois Material Producers' Association ("NIMPA") CBA.  (Pl.'s Aff. ¶ 8;

Pl.'s Aff. Ex. 2; Ex. A.)  The Lease Agreement does not mention the assignment of any duties

under the NIMPA CBA.  (Pl.'s Aff. ¶¶ 10, 11, 18; Pl.'s Aff. Ex. 4; Ex. C.)  Based on information

and belief, Illinois Mining purchased the Quarry in January of 2003.  (Pl.'s Aff. ¶ 9; Pl.'s Aff.

Ex. 3.)

        Based upon its supply needs, Roscoe mined the Quarry for a brief period of time in

March of 2007. (Pl.'s Aff. ¶ 13.)  Allegedly, on or about March 19, 2007, Local 150 purportedly

observed Roscoe employees loading trucks at the Quarry. (Pl.'s Aff. ¶ 14; Pl.'s Aff. Ex. 5.)

Local 150 then filed a grievance against Roscoe alleging that Roscoe is bound, as a successor to

the NIMPA CBA under Article XXII (Pl.'s Aff. ¶ 16; Pl.'s Aff. Ex. 6; Exhibit D), and "is not

paying wages and fringe benefits as required by the CBA."  (Pl.'s Aff. ¶ 14; Pl.'s Aff. Ex. 5;

Exhibit F at "Brief Statement of Facts.")  Local 150 has demanded arbitration of that grievance

against Roscoe. (*See* Pl.'s Aff. ¶ 16; Pl.'s Aff. Ex. 5; Ex. F; Exhibit G.)  By claiming a violation

of the CBA and by filing a grievance against Roscoe demanding arbitration, Local 150 seeks to

bind Roscoe to terms of the NIMPA CBA, a contract to which Roscoe is not a party.   Local

150's demands for arbitration have continued to the present time. (Pl.'s Aff. ¶ 20; Ex. G.)  On

March 5, 2008, the American Arbitration Association ("AAA") appointed an arbitrator, Mr.

Steven M. Bierig, to hear the grievance. (Pl.'s Aff. ¶ 21; Pl.'s Aff. Ex. 9; Exhibit H.)  Arbitrator

Bierig scheduled an arbitration hearing for September 12, 2008, which Plaintiff now seeks to

enjoin.  (Pl.'s Aff. ¶ 22; Pl.'s Aff. Ex. 10; Exhibit I.)

## III. ARGUMENT

### A.    The Matter is Properly Before This Court

#### 1.    *Roscoe Has Given Defendant Proper Notice of this Action in Compliance with Local Rule 5.3(a).*

When a Plaintiff is seeking a Preliminary Injunction, Rule 65(a)(1) of the Federal Rules of Civil Procedure requires that notice be given to the adverse party.  In compliance with Rule 5.3 of the Local Rules for the Northern District of Illinois, Plaintiff notified Defendant of the filing of this Motion on July 23, 2008, and served Defendant's in-house counsel with a copy of this Motion.

#### 2.    *The District Court Has Proper Federal Subject Matter Jurisdiction to Hear This Case.*

Plaintiff has concurrently filed a Petition for Declaratory Judgment with the instant Motion.  The Petition for Declaratory Judgment seeks a declaration of law that Roscoe is not a party, successor, subcontractor, or in any way bound by the CBA between Illinois Mining and Local 150.  Since the declaratory action is premised on Local 150's attempt to find Roscoe in violation of a collective bargaining agreement, subject matter jurisdiction exists under § 301 of the Labor Management Relations Act ("LMRA").  *See* 29 U.S.C. § 185.  In particular, the U.S. Supreme Court has held that "a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid . . . the federal court's power to adjudicate the contract's validity is ancillary to . . . its power to adjudicate '[s]uits for violation of contracts.'"  *Textron Lycoming Reciprocating Engine Div., AVCO Corp. v. UAW*, 523 U.S. 653, 658 (1998).  The Seventh Circuit has also confirmed that in such cases where the contract is alleged to be "invalid, the court may, consistent with § 301(a), adjudicate."  *IUOE, Local 150 v. Rabine*, 161 F.3d 427, 431 (7th Cir. 1998).  Accordingly, the matter arises under federal law and thus is properly before the Court.

3.    *The Court Has Personal Jurisdiction Over the Defendant.*

This Court has personal jurisdiction over Defendant, Local 150 under § 301(c) of LMRA, because its "duly authorized" agents are engaging in representation activities in the Northern District of Illinois.  29 U.S.C. § 185(c).

4.    *Venue is Proper in the Northern District of Illinois.*

Venue is proper in this Court because Cook County is the county of Defendant's principle office in Illinois, which is located at 6140 Joliet Road, Countryside, IL 60525.

**B.    Legal Standard**

The Seventh Circuit has stated that a "preliminary injunction is a provisional remedy designed to preserve the status quo until the case can be heard upon the merits." *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.,* 256 F.2d 806, 808 (7th Cir. 1958).  The factors a court considers in determining whether to issue a temporary restraining order ("TRO") or a preliminary injunction are the same. *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, 2001 WL 128164, at *1 (N.D. Ill. 2001).  *See Levas & Levas v. Vill. of Antioch*, 684 F.2d 446, 448 (7th Cir. 1982) (upholding trial court's decision to treat a motion for a TRO as an application for a preliminary injunction because a second, independent hearing would be redundant).  When considering a motion for a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, courts have required the following:

> Injunctive relief  . . . is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) irreparable harm to the plaintiff; and (3) no adequate remedy at law exists.  If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied.

*Illusion Too Reality, LLC v. City of Harvey*, 2003 U.S. Dist. LEXIS 1530, at *12 (N.D. Ill. 2003).  *See also Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).

In considering the three threshold requirements, courts focus on the relationship between the harm and the inadequate remedy. *See e.g. Libertarian Party v. Packard*, 741 F.2d 981, 985 (7th Cir. 1984) (finding that the availability of damages as a remedy prevented plaintiffs from showing irreparable harm). Here, as shown below, where Roscoe stands to lose its right to Due Process and free access to the courts, no other remedy would prevent this injustice from occurring. *See Libertarian Party,* 741 F.2d at 985 (*citing Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("[I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights" the Court should look at the merits of the underlying legal premise, because the "'loss of . . . freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"). While the Seventh Circuit has often applied a "sliding scale" when weighing likelihood of success on the merits against the potential for harm, *see Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994), such an analysis is unnecessary here since Local 150 would not suffer any injury as a result of the Court granting this Motion. Because Roscoe can make a strong showing on both the threshold elements and the policy considerations under the facts presented here (particularly the likelihood of success on the merits), Roscoe's Motion for a Preliminary Injunction should be granted.

### C.    Plaintiff Has a Strong Likelihood of Succeeding on the Merits by Showing That It is Not Bound to the Collective Bargaining Agreement Between Illinois Mining Corporation and Local 150

The alleged grievance, which necessitated this action, was filed pursuant to the "grievance and arbitration" procedures found in the NIMPA CBA. (Ex. A.) However, the duty to arbitrate is a creature of contract, and the arbitrator only has power to hear an issue "because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648–49 (1986) (*citing Gateway Coal Corp. v. Mine Workers*, 414 U.S. 368, 374 (1974)). Only a party to the contract which creates the duty to

arbitrate, can be compelled to arbitrate its grievances. Roscoe is not party to, nor subject to, the CBA between Illinois Mining and Local 150. Therefore, arbitration is inapplicable to this case. Without a showing that Roscoe is contractually bound to arbitrate, the Court will likely grant Plaintiff's Motion for a Declaratory Judgment.

1.    *Plaintiff is Not a Signatory to the Collective Bargaining Agreement and Thus Cannot be Bound to Arbitrate Under Its Terms.*

Roscoe is not a signatory to the CBA and thus cannot be bound by it. The substantive issue in this case is whether Roscoe is bound to terms found in a CBA to which it is not a signatory. Roscoe has never been a party to a contract, of any nature, with Local 150. The only contract to which Local 150 alleges Roscoe is bound, noticeably lacks any mention of Roscoe or signature of any agent associated with Roscoe. (Ex. A.) The fact that the specific term being thrust upon Roscoe, a non-contracting third party, concerns arbitration is irrelevant to the issue at hand. Like any other contractual obligation, the duty to arbitrate a dispute can only arise if there is a binding contract which creates such a duty. *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

"Here, the question is whether [Plaintiff], which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all by the agreement's arbitration provision." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). "[T]he rule that Courts must decide arbitrators' jurisdiction takes precedence." *Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 236 (7th Cir. 1993). The Supreme Court spoke to this issue in *Wiley*, stating that "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. . . ." *Wiley*, 376 U.S. at 547. Therefore,

Roscoe "cannot be compelled to arbitrate [since the] arbitration clause does not bind it at all." *Id.* Thus a declaratory judgment, determining the existence of a legal duty, must precede arbitration, and only by granting the Motion for Preliminary Injunction to Stay Arbitration can this Court prevent the occurrence of irreparable harm.

A motion for declaratory judgment places the court in an analogous role to that in a 12(b)(1) motion. In both cases, the proponent is fundamentally arguing that the adjudicator does not have the authority to hear the matter and enter final judgment. *See General Truck Drivers, Office, Food & Warehouse Local 952 v. Pepsi Cola Bottling Co*., 305 NLRB 268, 274, (N.L.R.B. 1991) ("Arbitration is not available where the issue concerns . . . a question of law, i.e., an interpretation of statutory rights or duties . . . ." Where the "case constitutes a claim by the Employer that the grievances are illegal . . . [d]eferral to arbitration, would, in effect constitute a decision on the merits."). To permit such a claim to proceed to final resolution, only to be challenged and vacated, would fly in the face of the expeditious purpose of arbitration. *See Geneva Securities Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir. 1997) (*referencing Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994)). Thus, the court is likely to grant Plaintiff's Motion for Declaratory Judgment in order to uphold the interests of justice.

Further arguments support the likelihood that the court will grant declaratory relief. The CBA's own grievance procedure, as provided in Article II, Section 2 (Step 3)(e), states that the "arbitrator shall be bound by the terms and provisions of this Agreement and shall have authority to consider only grievances presenting an arbitrable issue under this Agreement." (Ex. B.) Since the language of the CBA clearly states that the arbitrator can only consider "arbitrable issue[s]," Local 150 is implicitly conceding jurisdiction to the court to decide if a "grievance" presents an arbitrable issue within the scope of the CBA, otherwise referred to as deciding the issue of

"arbitrability." Under either construction, the court must determine the legal status of Roscoe with regards to the CBA before the inquiry can go any further.

> 2.     *Roscoe is Not a Successor to the Collective Bargaining Agreement and Even if It Were, It Would Not Be Bound to Arbitration.*

Local 150 claims that Roscoe is bound by virtue of its status as a successor to Illinois Mining. However, Local 150 has presented no plausible justification for this claim. Local 150 is attempting to bind Roscoe to the terms of the CBA (including the arbitration clause) "by virtue of Article XXII in NIMPA" (Ex. D), the successor and assigns clause. It is unlikely that the court will be distracted by allegations from Local 150 that Roscoe is a successor to the NIMPA CBA, since such a determination has no effect on the issue presented by the Petition for Declaratory Judgment.

To determine Roscoe's status in relation to the CBA, the court must determine if Roscoe is a successor to Illinois Mining. The Seventh Circuit has held that "'[t]here is [not,] and can never be . . . a formal definition of a successor . . . [T]he determination in each case involves the facts and the labor policy at issue.'" *IUOE, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (*citing NLRB v. Jarm Enterprises, Inc.*, 785 F.2d 195, 200 (7th Cir. 1986)). In this case, the inquiry begins and ends with the plain language of the contract.

The NIMPA CBA contains a successor and assigns clause in Article XXII, which provides:

> In the event that the Company sells or leases all, or substantially all of the assets ***of the Company*** to a Purchaser or Lessee and the Purchaser or Lessee continues to operate the business in the same manner and on the same basis as prior to the sale, then the Purchaser or Lessee shall be deemed to be a successor to this Agreement and be bound by the terms and conditions thereof to the same extent as was the Company. (Ex. D, emphasis added.)

Local 150 argues that it is this provision which causes Roscoe to be bound to the terms of the NIMPA CBA. (Ex. D.) However, this argument fails because the term "Company" is a defined

term in the CBA; meaning Illinois Mining. Therefore, "all, or substantially all of the assets of the Company," can only mean the total holdings or assets belonging to the corporate entity identified as Illinois Mining. The Quarry represented a "non-core" holding, and "[i]t was not and would never be considered all or substantially all of [Illinois Mining's] assets or operations." (Ex. E.) Local 150, in its letter dated June 15, 2007 (Ex. D), concedes that the lease did not cover substantially all the assets *of the Company*, when it states that "Illinois Mining Corp, has leased all or substantially all *of its assets at its Roscoe, Illinois, quarry.*" (Ex. D, emphasis added.) Therefore, based on the facts, Plaintiff will not likely be considered a successor under any construction of the law or interpretation of contract.

However, this determination has no legal effect on the issue at hand, since successor status cannot bind a non-party to the terms of a former collective bargaining agreement. *Howard Johnson Co. v. Detroit Local Joint Executive Board, Hotel & Restaurant Employees & Bartenders International Union*, 417 U.S. 249, 257 (1974). In *Howard Johnson*, the predecessor employer was party to a collective bargaining agreement that contained a successors and assigns provision, but the court firmly held that a purchaser in an asset sale cannot be bound by a successors and assigns provision in the predecessor's collective bargaining agreement absent consent. *Id.* at 258. The Supreme Court stated this principle:

> The mere existence of the successorship clauses in the bargaining agreements between the Union and the [predecessor], however, cannot bind [the successor] either to the substantive terms of the agreements or to the arbitration clauses thereof . . . when it is perfectly clear the Company refused to assume any obligations under the agreements.

*Howard Johnson*, 417 U.S. at 258 n.3. In successorship cases, the rule of law is clear. While the successor and assigns clause may give the Union the power to block the asset sale, or to force a successor to bargain collectively with them *over a new contract*, "such contractual provisions do not bind non-signatory successors" to the prior contract. *International Oil, Chemical & Atomic*

*Workers, Local 7-517 v. Uno-Ven Co.*, 170 F.3d 779, 783 (7th Cir. 1999). Even if Local 150 were to allege that Roscoe was a successor to Illinois Mining, such a determination must be sought prior to compelling arbitration, and must be sought through the Unfair Labor Practice procedures of the NLRB. *Howard Johnson*, 417 U.S. at 262.

Simply put, the matter before the court in the Motion for Declaratory Judgment is the determination of the status of Local 150's legal right to compel arbitration. It is plain that the terms of that contract, including the duty to arbitrate grievances with Local 150, do not, and cannot, apply to the Plaintiff. Thus, it is likely that the court will grant judgment in Plaintiff's favor, declaring the absence of any contractual duty owed to Local 150, including the duty to arbitrate. Given that the contract, on its face, does not even arguably support Defendant's claim, the likelihood of success on the merits of this suit are strongly in Plaintiff's favor. This Court should grant Plaintiff's Motion for Preliminary Injunction to prevent the ultimate harm Roscoe will surely suffer.

### D.     The Balance of Harm Weighs in Favor of Roscoe

> 1.     *Plaintiff Risks Suffering Irreparable Harm to Which There is No Adequate Compensatory Remedy at Law.*

Roscoe stands to suffer irreparable harm if its motion is denied, where on balance, Local 150 stands to suffer no harm if this motion is granted. The Seventh Circuit has elaborated on the second and third elements of the standard, by defining irreparable harm as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Inadequate remedy at law does not mean wholly ineffectual remedy; rather the remedy must be seriously deficient as compared to the harm suffered. *FoodComm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

If Roscoe is forced to appear at arbitration to defend itself against an unmeritorious

grievance, it has no choice but to either recognize the jurisdiction and authority of an arbitrator to adjudicate a dispute or risk a default ruling. In either instance, Roscoe must necessarily expend significant time and money preparing a defense to a claim which has no basis in fact or law. An Order that stays the arbitration until it can be determined if any duty to arbitrate arises will reinforce the underlying Supreme Court precedent and will further the "expeditious" policy justification upon which arbitration is based. *See Preston*, 128 S. Ct. at 986 (2008).

2.     <em>Granting This Motion Does Not Harm Defendant.</em>

An Order in favor of Roscoe's Motion for a Preliminary Injunction would not alter the current status of the Defendant's alleged grievance or the merits of its claim. Since the purpose of the declaratory judgment hearing is to determine if Defendant has a legal right to demand arbitration, and since the alternative outcome to the declaratory judgment would be an order to compel arbitration in Defendant's favor, Defendant does not stand to lose any legal right. Further, even if Defendant were to survive the declaratory judgment action and prevailed in arbitration, the only available remedy would be monetary damages, which can be appropriately adjusted to account for any delay caused by either of these proceedings. Since Plaintiff stands to suffer irreparable harm from the denial of the Preliminary Injunction, while the Defendant's position will be unaltered, the balance of potential harm strongly favors the Plaintiff. Therefore, this Court should grant Plaintiff's Motion for a TRO and Preliminary Injunction in order to prevent irreparable harm to the Plaintiff.

**E.     An Injunction Against the Defendant Will Serve the Public Interest**

It is always in the public interest to uphold the policies and principles of the law. The purpose of arbitration is to "place '[a]n arbitration agreement . . . upon the same footing as other contracts.'" *Southland Corp. v. Keating*, 465 U.S. 1, 15 (1984). To be bound by the terms of a contract, the parties to the contract must arguably express an intent to be bound, and specifically

-12-

be bound to the agreement to arbitrate.  The issue of severability does not apply, as it would in the case of fraud, where one party at least manifested some intention to enter into an agreement to arbitrate with the other party.  *See e.g. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) (finding that the issue of contract validity is properly before the arbitrator unless the claim of fraud is "in the inducement of the arbitration clause itself-an issue which goes to the making of the agreement to arbitrate").  This "notice of intent" theory is based on the fact that negotiations, even those involving fraud, show that the parties intended to be bound at the time of contracting.  However, one cannot make a similar argument based on the facts of the case at hand.  The absence of any language in the Lease Agreement mentioning an assignment of rights, where other assignments of rights were mentioned, does not provide notice to Roscoe that it would be bound, and therefore cannot be considered to manifest an intent to be bound.

Only if a court deemed Roscoe to be a successor under the terms of the CBA would the arbitration clause apply to Roscoe.  It would be the proverbial "putting the cart before the horse" to apply the arbitration clause to Roscoe for the purposes of determining if it was a successor. *See AT & T*, 475 U.S. at 649.  Without such a ruling, there is no basis to allow the arbitration to go forward.  Otherwise, a union could allege that any company, anywhere, at any time was a successor.  In turn, the thoroughly surprised company would have to arbitrate, sacrificing its constitutional right to Due Process.  To apply the law in this manner would be in direct contradiction to Supreme Court precedent and the fundamental principles  of arbitration and contractual freedom.  Therefore, granting Plaintiff's Motion for Preliminary Injunction in this case would further the public policy and uphold prior precedent.

### F.    The Court Should Not Require A Bond

Rule 65(c) of the Federal Rules of Civil Procedure sets forth the requirement that Plaintiff must post a bond when petitioning the court to grant a preliminary injunction. However, the Seventh Circuit has stated that the amount of the bond is left to the discretion of the court. *See Am. Hosp. Supply Corp. v. Mueller*, 780 F.2d 589 (7th Cir. 1986). The Northern District of Illinois has previously identified the purpose of the bond as guaranteeing a remedy to the Defendant if wrongfully enjoined. *Cf. LaSalle Capital Group, Inc. v. Alexander Doll Co.*, 1995 U.S. Dist. LEXIS 14338 (N.D. Ill. 1995). In line with this reasoning, this Court should exercise its discretion in granting the Preliminary Injunction without requiring the posting of a bond, because, as discussed above, the Defendant does not stand to suffer any harm from enjoinment. Additionally, requiring the bond would only perpetuate the ongoing financial attack on Roscoe's assets, which Plaintiff alleges is the primary purpose for which Defendant has pursued its frivolous grievance.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**ROSCOE ROCK AND SAND INC.,**

             Plaintiff,

      v.

**INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL
150, AFL-CIO,**

             Defendant.

No.  08-cv-4091

Hon. Judge Hart
Magistrate Judge Mason

### PLAINTIFF'S TABLE OF EXHIBITS

**Exhibit A:**      **Excerpts from the Collective Bargaining Agreement Between the Northern Illinois Material Producers' Association and International Union of Operating Engineers, Local 150, AFL-CIO.**

**Exhibit B:**      **Certified Election Results Dated March 28, 2002 from the National Labor Relations Board Certifying Vote of Roscoe's Employees Against Local 150.**

**Exhibit C:**      **Lease Agreement Between Roscoe Rock & Sand, Inc. and Illinois Mining Company Concerning the Quarry on Pieper Road in Durand, Illinois.**

**Exhibit D:**      **Letter Dated June 15, 2007 to Ms. Martin-Tyler from Local 150 Alleging Article  XXII of the NIMPA Agreement as the Basis for Demanding Arbitration.**

**Exhibit E:**      **Letter Dated June 29, 2007 to Ms. Marge Bauch from Illinois Mining Corporation Stating Quarry's Relation to Company's Total Assets.**

**Exhibit F:**      **Grievance Dated April 6, 2007 and Attached Letter Demanding Arbitration of Grievance.**

**Exhibit G:**      **Letter Dated February 20, 2008 to Parties from the American Arbitration Association Confirming the Continuation of Local 150's Demand for Arbitration of the Grievance.**

**Exhibit H:**      **Letter Dated October 5, 2007 to Parties from the American Arbitration Association Appointing Steven Bierig as the Arbitrator in this Matter.**

**Exhibit I:**      **Notice of Hearing Dated March 5, 2008 from the American Arbitration Association Scheduling a Hearing for September 12, 2008 Before Arbitrator Steven Bierig.**

# EXHIBIT A

# COLLECTIVE BARGAINING
# AGREEMENT

## between the

## NORTHERN ILLINOIS MATERIAL
## PRODUCERS ASSOCIATION



## and

## INTERNATIONAL UNION OF
## OPERATING ENGINEERS

**Effective May 1, 2005 through April 30, 2010**

exclusive bargaining agent of the employees within the classifications of work set forth in Article VI hereof and who are employed at the pits, yards, quarries and operations of the Companies that are located within the present geographic area of jurisdiction of the Union, for the purpose of collective bargaining with respect to rates of pay, hours and other conditions of employment. As a matter of jurisdiction, all work that has been performed by custom or practice, by employees of a Company within this particular industry shall continue to be so performed.

**Section 2 - Union Shop.** All employees shall be obligated to become members of the Union after the 30th, but not later than the 35th day of employment, the date of the execution of this Agreement or the effective date of this clause, whichever occurs later, as a condition of continued employment. All employees who are members of the Union shall maintain their membership in the Union as a condition of continued employment. Any employee who fails to become a member of the Union or fails to maintain his membership therein in accordance with the foregoing shall forfeit his right of employment, and the Company shall immediately discharge such employee, provided however, that the foregoing shall be strictly interpreted, construed and applied in accordance with the applicable provisions of the Labor-Management Relations Act of 1947, as amended.

## ARTICLE II

## GRIEVANCES AND ARBITRATION

**Section 1 -** A grievance shall consist of a difference or dispute between the Company and an employee ("employee grievance") or between the Company and the Union ("Union grievance") as to the interpretation or application of the terms of this Agreement which has been referred to this grievance procedure.

2



(a) To be valid, the grievance must be reduced to writing, signed by the employee in the case of an employee grievance, or the Union in the case of a Union grievance, and presented to the Company within two weeks following the occurrence of the event giving rise to the grievance.

(b) Each time limit set forth in a step of the grievance procedure must be adhered to (unless an extension is mutually agreed to within the original time limits) or the grievance shall be deemed to have been settled on the basis of the Company's answer at the preceding step, unless the failure to adhere to the time limits is caused by the Company.

**Section 2** - The grievance procedure shall be as follows:

**Step 1** - An effort shall be made to adjust the grievance by and between the employee having the grievance and his supervisor. The Company shall give a written answer to the grievance within seven (7) calendar days following presentation of the grievance to the Company.

**Step 2** - If the Company's answer does not resolve the grievance, the Business Representative of the Union and a representative of the Company shall meet and attempt to resolve the grievance within two (2) weeks following the Company's answer at Step 1 or from the date a union grievance is received, as the case may be. The Company shall give its answer in writing within seven (7) calendar days following this Step 2 meeting.

**Step 3** - If the Company's answer does not resolve the grievance, it may then be submitted to arbitration within two (2) weeks after conclusion of Step 2 in the following manner:

(a) The party desiring arbitration shall notify the other party in writing that it is demanding arbitration



(b) Within seven (7) calendar days after the receipt of such demand, the Company and the Union shall jointly request from the American Arbitration Association a panel of arbitrators, but not less than seven (7), from which panel a single arbitrator shall be selected.

(c) Selection of the single arbitrator shall be made from the panel in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association.

(d) A mutually agreeable place and date for the hearing shall be arranged through the services of the American Arbitration Association.

(e) The matter shall then proceed to arbitration as quickly as possible and the arbitrator so selected shall hear all evidence and then render a decision based on the evidence and the Agreement. The arbitrator shall be bound by the terms and provisions of this Agreement and shall have authority to consider only grievances presenting an arbitrable issue under this Agreement. The Arbitrator shall have no authority to add to, subtract from, modify or amend any of the provisions of this Agreement. Furthermore, it is specifically agreed that no arbitrator shall have the authority to establish or modify any wage rate or job classification or authority to decide the appropriate classification of any employee. A decision of the arbitrator on any grievance within the scope of the issue submitted shall be final and binding on the Company, the Union and the employee or employees involved. The arbitrator's fee and expenses shall be paid equally by the parties to the arbitration. Each party shall pay its own expenses with respect to its own witnesses, stenographer

4

MEMORANDUM OF AGREEMENT

# EXHIBIT  B

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
SUBREGION THIRTY-THREE

ROSCOE READY-MIX, INC.,
ROSCOE ROCK & SAND, INC.
AND BEE LINE READY-MIX

                          Joint Employers

   and                                      Case 33-RC-4665
                                          Stipulated

TEAMSTERS LOCAL UNION NO. 325,
AFFILIATED WITH THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, AFL-CIO
AND INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 150, AFL-CIO

                      Joint Petitioners

## CERTIFICATION OF RESULTS OF ELECTION

An election has been conducted under the Board's Rules and Regulations. The Tally of Ballots shows that no collective bargaining representative has been selected. No timely objections have been filed.

As authorized by the National Labor Relations Board,

It is certified that a majority of the valid ballots have not been cast for any labor organization, and that no labor organization is the exclusive representative of the employees in the bargaining unit described below:

All production and operations employees, including but not limited to drivers and operators, employed by the Joint Employers at their facilities located in Roscoe, Belvidere, Durand and Pecatonica, Illinois; but excluding all office clerical employees, professional employees, managerial employees, guards and supervisors as defined in the Act.

Dated at Peoria, Illinois this March 28, 2002

                                 Ralph R. Tremain, RD
                                 Region 14

By:                                        

                                 Will J. Vance, Officer-In-Charge
                                 National Labor Relations Board
                                 Subregion Thirty-Three
                                 300 Hamilton Square, Suite 200
                                 Peoria, Illinois   61602

FORM NLRB-760
(12-62)

UNITED STATES OF AMERICA
**NATIONAL LABOR RELATIONS BOARD**

| | |
|---|---|
| ROSCOE READY-MIX, INC., ROSCOE ROCK & SAND, INC. AND BEE LINE READY-MIX Joint Employers and TEAMSTERS LOCAL UNION NO. 325, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO AND INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO Joint Petitioners | Date Filed: 2/07/02 Case No. 33-RC-4565 Date Issued 3/20/02 Type of Election (Check one:) ☑ Stipulation ☐ Board Direction ☐ Consent Agreement ☐ RD Direction Incumbent Union (Code) (If applicable check either or both:) ☐ 8(b) (7) ☑ Mail Ballot |

## TALLY OF BALLOTS

The undersigned agent of the Regional Director certifies that the results of the tabulation of ballots cast in the election held in the above case, and concluded on the date indicated above, were as follows:

1. Approximate number of eligible voters .............................................................. 31

2. Number of Void ballots .................................................................................. 1

3. Number of Votes cast for JOINT PETITIONERS ................................................ 6

XXXXXXXXXXXXXXXXX ......................................................................

XXXXXXXXXXXXXXXXX ......................................................................

6. Number of Votes cast against participating labor organization(s) ...................... 23

7. Number of Valid votes counted (sum of 3, 4, 5, and 6) ................................... 29

8. Number of Challenged ballots ........................................................................ 1

9. Number of Valid votes counted plus challenged ballots (sum of 7 and 8) .......... 30

10. Challenges are (not) sufficient in number to affect the results of the election.

11. A majority of the valid votes counted plus challenged ballots (Item 9) has (not) been cast for _____

JOINT PETITIONERS

For the Regional Director ____ By: *Greg Pinsay* _____
Board Agent - Subregion 33

The undersigned acted as authorized observers in the counting and tabulating of ballots indicated above. We hereby certify that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, and that the results were as indicated above. We also acknowledge service of this tally.

For JOINT EMPLOYERS _____     For JOINT PETITIONERS _____

For _____     For _____

# EXHIBIT C

Contract proposal between:
Illinois Mining Corp. / Duran Yard 39 & Roscoe Rock & Sand, Inc.
For Contract Purchase Agreement (CPA)

The detailed amounts of the purchase agreement are separate from this Contract Purchase Agreement (CPA).

This Contract Purchase Agreement (CPA) to begin (December 15th 2006 an ends December 15th 2008), running 2 consecutive 12 month periods for a duration up to 2 years without change. The Contract Purchase Agreement (CPA) can be canceled by either party with due notice for a justified cause. Whereby due notice for lease would be either party giving other party six months written notice*.  Due notice for purchase of property could be verbal**.   Justified cause for cancellation of agreement is listed in contract***.

The royalty payment based on material solely produced by Roscoe Rock & Sand, Inc. after December 15th, 2006 shall be straight royalty payments made from Roscoe Rock & Sand, Inc. to Illinois Mining Corp. to total $.65 per ton for material removed from the face, not already stockpiled in the yard.  Royalty payments will be based on blasting records from Roscoe Rock & Sand, Inc. and will be reported to Illinois Mining Corp. as they occur but will be paid no more than 60 days after date of blasting. Royalty payments will in no way effect the final purchase prices of the property in the Contract Purchase Agreement (CPA).

The second form of payment will be based on Illinois Mining Corp.'s  stockpiled materials that have been blasted from the face and processed prior to December 15th, 2006 that no royalty payment has been made on.  Roscoe Rock & Sand, Inc. will be responsible for billing, loading, and collecting payment for the material sold after December 15th 2006.  Monies paid to Illinois Mining Corp. by Roscoe Rock & Sand for sales of stockpiled materials, will be deducted from the final purchase price of the property in the Contract Purchase Agreement (CPA).

Stockpile payment to be made from Roscoe Rock & Sand, Inc. to Illinois Mining Corp. for stockpile materials sold, after December 15th 2006.  Amount due to Illinois Mining Corp. would be based on the agreed upon Royalty Price (as listed below) and paid to Illinois Mining Corp. no later than 90 days after date of sale, whereas, sale date being determined by the date material is hauled from the pit in its original or processed form.

In addition Roscoe Rock & Sand, Inc. is also responsible for payment of utilities at the Durand Facility during the duration of this contract.

Estimated amounts of said material, these are just estimates, are listed below...

| Material | Estimated ton's | Royalty Price | Roscoe Rock & Sand, Inc<br>Suggested/Sale/Price***** |
|---|---|---|---|
| 1-1/2" | 7,000 ton's | $3.00 (21,000) | $4.50 (31,500) |
| 7/8" | 5,000 tons | $3.50 (17,500) | $6.00 (25,000) |
| 3/8" Chips | 6,000 tons | $3.50 (21,000) | $5.50 (30,000) |
| 3" | 6,000 tons | $3.00 (18,000) | $4.50 (27,000) |
| CA-6 (new) | 14,000 tons | $3.00 (42,000) | $4.50 (63,000) |
| CA-6 (old) | 6,000 tons | $1.50 (9,000) | $2.50 (15,000) |
| Screening | 0 tons | $1.00 | N/A |
| 3" Minus | 6,000 tons | $1.00 (6,000) | $2.50 (15,000) |

Sub totals (134,500)                 (206,500)
Difference of (72,000)

Estimated tons will not equal scaled material but if Roscoe Rock & Sand, Inc. disputes estimate this should be brought to Illinois Mining Corp.'s attention for adjustment on future record.

Loading, scaling, and billing of said material is the sole responsibility of Roscoe Rock & Sand, Inc. Roscoe Rock & Sand, Inc. agrees to leave a machine at the quarry that can be used for loading. The machine will be insured by Roscoe Rock & Sand, Inc. and Roscoe Rock & Sand, Inc. will supply Illinois Mining Corp. with a certificate of insurance. All customers should call Roscoe Rock & Sand, Inc. to coordinate for loading and scale use. Under this agreement Roscoe Rock & Sand will be solely responsible for all mining operations on the property for the materials afore mentioned in this contract

If at anytime during this two-year lease Contract Purchase Agreement (CPA)  Roscoe Rock & Sand, Inc. exercises their purchase option for the property Roscoe Rock & Sand, Inc. will honor the currently existing land contract between Illinois Mining Corp. and Jim Blunt the tenant farmer.
At any time prior to Roscoe Rock & Sand, Inc. exercising their purchase option Illinois Mining Corp. will remain in full control of all property not being actively mined at the site and this agreement will in no way effect the already existing agreement between the tenant farmer, Jim Blunt, and Illinois Mining Corp.

Illinois Mining Corp. reserves the right to mine and/or produce specialty products for their own use i.e. flag stone, ledge rock, dry wall etc.  Illinois Mining Corp. will not interfere with Roscoe Rock & Sand, Inc. production.

*If at any time Roscoe Rock & Sand Inc. expresses no further interest in purchasing the Durand site, six months written notice for cancellation should be given prior to May 15th of the same year with consideration time for Roscoe Rock & Sand, Inc. to remove any stockpiles of material that have been made prior to December 15th of that same year will extend till Jan 15th of the following year, this consideration will be part of the contract purchase (CPA).

**Under this purchase agreement Roscoe Rock & Sand Inc. has first option to purchase the property for an agreed upon price or match any offer greater than the agreed upon

amount made to Illinois Mining Corp. for the duration of this contract being December 15th, 2006 to Dec. 15th 2008. If at any time prior to the December 15th 2008 date Roscoe Rock & Sand Inc. expresses no further interest in purchasing the property, Illinois Mining Corp. can find another buyer for the property.

*** Justified cause for Illinois Mining Corp. would be, after Roscoe Rock & Sand Inc. has failed to exercise their option to purchase the property, sale of property by Illinois Mining Corp. to another buyer.  Justified cause for Roscoe Rock & Sand, Inc., OPEN.

***** Illinois Mining Corp. will be allowed to purchase materials produced by Roscoe Rock & Sand, Inc. after December 15th 2006, for resale to its own customers, (based on availability), for an agreed upon suggested sale price between the two parties. This price may be adjusted from year to year by Roscoe Rock & Sand, Inc. giving Illinois Mining Corp. written notice of increases with consideration given for projects already started.

# EXHIBIT  D

# INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150A, 150B, 150C, 150D, 150E, 150H



6140 JOLIET ROAD
COUNTRYSIDE, IL 60525

708-579-6663
FAX 708-588-1647

DALE D. PIERSON
ELIZABETH A. LaROSE
MELINDA S. HENSEL
ROBERT E. ENTIN

**LEGAL DEPARTMENT**

BRYAN P. DIEMER
CHARLES R. KISER
MARC R. POULOS
JAMIE J. OLSON
ROBERT S. REITER, JR.
JENNIFER A. RIGNEC
STEVEN M. STEWART

June 15, 2007

<u>VIA FACSIMILE AND REGULAR MAIL</u>
Ms. Monica Martin-Tyler
American Arbitration Association
American Center Building
27777 Franklin Road, Suite 1150
Southfield, MI 48034-8208

Re:   IUOE, Local 150, AFL-CIO and Roscoe Rock & Sand
        AAA No. 51 300 00552 07
        Grievance No. 07-044 (Loader Subcontracting)
        Our File No. GA-00443

Dear Ms. Martin-Tyler:

This in response to your letter of June 5, 2007, regarding the above matter.

On January 7, 1990, Illinois Mining Corporation signed a Memorandum of Agreement with Local 150 in which Illinois Mining Corp. adopted the terms of the Northern Illinois Material Products' Agreement ("NIMPA"). Article XXII of NIMPA provides:

> In the event that the Company sells or leases all, or substantially all of the assets of the Company to a Purchaser or Lessee and the Purchaser or Lessee continues to operate the business in the same manner and on the same basis as prior to the sale, then the Purchaser of Lessee shall be deemed to be a successor to this Agreement and be bound by the terms and conditions thereof to the same extent as was the Company.

Illinois Mining Corp. has leased all or substantially all of its assets at its Roscoe, Illinois, quarry to Roscoe Rock & Sand. Therefore, by virtue of Article XXII in NIMPA, Roscoe Rock & Sand is bound by the terms and conditions of NIMPA to the same extent as was Illinois Mining Corp.



INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL UNION No. 150
**LEGAL DEPARTMENT**

Ms. Monica Martin-Tyler
June 15, 2007
Page 2

Roscoe Rock & Sand's position that it "does not have any affiliation with" Local 150 is therefore without merit. Please provide the parties with a panel of arbitrators at your earliest convenience.

Sincerely,

IUOE, LOCAL 150, AFL-CIO
LEGAL DEPARTMENT

Bryan P. Diemer

BPD/ms
cc:    Steven M. Cisco
       Steve Russo *(via facsimile)*

# EXHIBIT E



# Illinois Mining Corp.

41 Walter Court          Lake in The Hills, Illinois 60156          (847) 954-1555
Fax (847) 854-1584

June 29, 2007

Marge Bauch
Roscoe Rock & Sand Inc.
5029 McCurry Road
P.O. Box 1027
Roscoe, IL 61073

Dear Marge:

Illinois Mining Corporation acquired the property on Pieper Rd in Durand Illinois in January of 2003. The purchase was to add to our strategic mining reserves. It became one of many properties we operated in the Northern Illinois region.

Over the course of the four years we owned and operated the property we incurred less than 1% of our overall payroll at that site. It was not and would never be considered all or substantially all of our assets or operations. It was determined to be a non-core holding and subsequently a deal was struck with Roscoe Rock and Sand Inc.

We do not believe that Article XXII of NIMPA even remotely applies in this situation as the property was not all or substantially all of Illinois Mining Corporation's assets.

Sincerely,

Thomas P. Emma
Chief Financial Officer

# EXHIBIT F

# INTERNATIONAL UNION OF OPERATING ENGINEERS

### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 485-9001 • FAX (708) 485-7166
6300 JOLIET ROAD
COUNTRYSIDE, IL 60525-3995

April 6, 2007

*Via Fax (815) 389-1858 and*
*(815) 389-1143*
*CM 7005 3110 0003 7554 3790*

Mr. Stephen Bauch
Roscoe Rock & Sand
5029 McCurry Road
Roscoe, Illinois 61073

RE:    Roscoe Rock & Sand, Inc. – Violations of Article(s) VI, Section 1 & 8; Article XVI,
      Sections 1, 2, 3, 5, & 6; and Article XXII of the Northern Illinois Material Producers
      Association Agreement effective May 1, 2005 through April 30, 2010;
      Union File No. 07-044        *(Members – Local 150 Out of Work List)*
                                       *(Loader)*

Dear Mr. Bauch:

     Please take notice, that the Union hereby demands Arbitration in the above-referenced matter.

Sincerely,
William E. Dugan
PRESIDENT-BUSINESS MANAGER

By: Steven M. Cisco
Recording-Corresponding Secretary

SMC/bca

cc:    Steven Russo, Business Representative – Dist. 5
     Dale Pierson, General Counsel

# INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER

(708) 482-5900 · FAX (708) 482-7180
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

# GRIEVANCE

Use additional sheets if necessary

Grievant's Name: Local 150 and all affected bargaining unit members.        Date Filed: MARCH 27, 2007

## STEP ONE / STEP TWO (If Union Grievance)

Date of Incident March 19th 2007 and ongoing at
Durand Location
18484 Pieper Rd.
Durand, IL 61024

Article(s) & Section(s) of Contract Violated:   Including, but not limited to, NIMPA Contract
Article VI   Sections 1 and 8
Article XVI  Sections 1,2,3,5,6
Article XXII

Brief Statement of Facts: Witnessed Roscoe employee's loading their own trucks on March 19, 2007 took pictures of them doing so, talked to the man on the loader said he was not an Operating Engineer and that he was running Roscoe's loader. I asked him if this was still Illinois Mining he said yes but Roscoe was leasing the property.  Roscoe is not paying wages and fringe benefits as required by the CBA. In addition, Roscoe is subcontracting to non-signatories in violation of CBA.

Remedy Sought:     Make whole per CBA and all other Appropriate remedies

Presented To:  Roscoe Rock and Sand            Time and Date:  March 27, 2007
               5029 McCurry Road
               Roscoe, IL 61073 .

Method of Delivery:  Faxed to (815) 389-1143
And also mailed to 5029 McCurry Road. Roscoe, IL 61073

*Stephen Russo*
Representative's Signature

## EMPLOYER'S RESPONSE

_____                    Position

Employer's Representative Signature

_____                    Date

Response Recipient

## STEP TWO / STEP THREE ( If Union Grievance)

Presented To:                          Date and Time:

_____
Representative's Signature

# EXHIBIT G

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Michigan Labor Center*

February 20, 2008

American Center Building, Suite 1150, 27777 Franklin Road, Southfield, MI 48034-8208
telephone: 800-891-4741 facsimile: 248-352-3147
Internet: http://www.adr.org/

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL  60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL  60606

Re: 51 300 00552 07
    IUOE, Local 150, AFL-CIO
    and
    Roscoe Rock & Sand

Grievances:    #07-044 - Loader Subcontracting

Dear Parties:

The Arbitrator is now offering August 27 or September 12, 2008 for a hearing date.

The parties are requested to advise the undersigned immediately of their availability on said date(s). Absent a response by March 3, 2008 , we will assume the date(s) to be satisfactory and a formal Notice of Hearing will be forwarded promptly.

Thank you for your cooperation.

Very truly yours,


Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

cc:
        Steven M. Bierig, Esq.

# EXHIBIT  H

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Michigan Labor Center*

October 5, 2007

American Center Building, Suite 1150, 27777 Franklin Road, Southfield, MI 48034-8208
telephone: 800-891-4741 facsimile: 248-352-3147
internet: http://www.adr.org/

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL  60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL  60606

Re: 51 300 00552 07
    IUOE, Local 150, AFL-CIO
    and
    Roscoe Rock & Sand

Grievances:    #07-044 - Loader Subcontracting

Dear Parties:

This is to advise the parties that Steven M. Bierig has been appointed Arbitrator in the above-captioned matter. The Arbitrator has agreed that for this arbitration the per diem for each day of hearing or part thereof, and for all time devoted to considering evidence and the preparation of the Award and Opinion is at the rate stated on the enclosed resume. This Arbitrator's cancellation policy is also described in the resume.

The Arbitrator is offering January 30 or February 6, 2008 for a hearing date.

The parties are requested to advise the undersigned immediately of their availability on said date(s). Absent a response by October 15, 2007, we will assume the date(s) to be satisfactory and a formal Notice of Hearing will be forwarded promptly.

Very truly yours,

Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

cc:    Steven M. Bierig, Esq.

# EXHIBIT I

# AMERICAN ARBITRATION ASSOCIATION
## Notice of Hearing

March 5, 2008

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL 60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL 60606

Re: 51 300 00552 07
     IUOE, Local 150, AFL-CIO
     and
     Roscoe Rock & Sand

Grievances:    #07-044 - Loader Subcontracting

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Place:   American Arbitration Association
         225 N. Michigan Ave.
         Suite 1840
         Chicago, IL 60601

Date:    September 12, 2008
Time:    10:00 AM
Before:  Steven M. Bierig

NOTE:

Please attend promptly with your witnesses and be prepared to present your proofs.

Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

NOTICE: The arbitrator(s) have arranged their schedule and reserved the above date(s) based on the advice of the parties. Therefore, every effort should be made to appear on the date(s) scheduled. In the event that unforeseen circumstances make it impossible to attend the hearing as scheduled, a party requesting a postponement should obtain the agreement of the other party. If there is no mutual agreement, the arbitrator(s) will make a determination. All requests for postponements must be communicated to the Case Manager not the arbitrator. There should be no communication between the parties and the neutral arbitrator(s) other than at oral hearings. In some instances, postponements are subject to cancellation fees by the arbitrator(s). Any party wishing a stenographic record must make arrangements directly with the stenographer and notify the other parties in advance of the hearings.

cc:    Steven M. Bierig, Esq.