**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ROSCOE ROCK AND SAND INC.,** | |
| Plaintiff, | |
| v. | No. |
| **INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO,** | |
| Defendant. | |

**AFFIDAVIT OF MARGARET A. BAUCH**

I, MARGARET A. BAUCH, being of lawful age and sound mind, declare and state as follows:

1. I make this affidavit in support of Plaintiff's Motion for a Preliminary Injunction against Defendant, International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"). I am fully familiar with the facts giving rise to the cause of action stated in the complaint herein and with the facts giving rise to the need for the relief sought in the instant action. The facts stated in this affidavit are based upon my own personal observations.

2. I am over the age of twenty-one (21), I am competent in mind and body, and I give this affidavit of my own free will.

3. I am currently employed by Roscoe Rock and Sand, Inc. ("Roscoe") as Secretary and Treasurer. I have been employed by Roscoe for approximately 12 years. I began my employment with Roscoe in April 1996.

4. As Secretary and Treasurer of Roscoe, I am familiar with, and have access to, the business records of Roscoe, as well as the employment records of employees working at the Pieper Road Quarry ("Quarry") in Durand, Illinois.

1

5.   Roscoe, a Corporation licensed to do business in the State of Illinois, who's place of business in Illinois is located at 5029 McCurry Road, P.O. Box 1027, Roscoe, IL 61073.

6.   Roscoe is a non-union company in the construction business, specifically the business of mining and supplying aggregate stone.

7.   In 2002, Local 150 conducted an organizing campaign among Roscoe's employees, and lost. The National Labor Relations Board ("NLRB") conducted a duly authorized election on March 20, 2002 and certified that the election results showed that a majority of Roscoe's employees had voted against the selection of Local 150 as their bargaining representative. (Election Results Attached as Exhibit 1.)

8.   Documents provided to me indicate that Illinois Mining Corporation (Illinois Mining) and Local 150 are contracting parties to the Northern Illinois Material Producers' Association ("NIMPA") Collective Bargaining Agreement ("CBA" or "Agreement"). (Documents Provided are Attached as Exhibit 2.)

9.   In January of 2003, Illinois Mining originally purchased the Pieper Road Quarry and added it to the Company's already extensive mining assets. (Communication with Illinois Mining Attached as Exhibit 3). Over the next four years Illinois Mining operated the Quarry at a loss. Based on information from Illinois Mining, the Quarry constitutes a "non-core holding" with less than one percent (1%) of its payroll being paid at that location. (Ex. 3.)

10.  In 2007, Roscoe entered into a two year leasing agreement, to lease the Quarry from Illinois Mining. (Lease Agreement Attached as Exhibit 4.)

11.  Roscoe specifically undertook independent and exclusive "responsibility for billing, loading, and collecting payment for the material" removed from the Quarry, and contemplated independent operation of the Quarry without interference from Illinois Mining, including the maintenance and insurance if its own loader for the site and the payment of all utilities due during the duration of the lease. (Ex. 4.)

12.   The Lease Agreement does not mention the assignment of any duties owed to Local 150, nor does it mention the assignment of any duties or terms under the NIMPA CBA. (Ex. 4.)  Nor was any such assignment ever discussed during the negotiations to lease the Quarry.  The only assignment of rights and duties intended under the Lease Agreement are those due under the current land contract with tenant farmer, Jim Blunt, and that assignment only becomes effective if Roscoe exercises its option to purchase. (Ex. 4.)

13.   In March of 2007, Roscoe was mining and hauling aggregate from the Quarry in order to fulfill its supply needs.  Roscoe owns its own loaders to load aggregate into the trucks and uses its own employees to operate the loaders and associated machinery.  Since May of 2007, Roscoe has not conducted further activity at the Quarry.

14.   On April 6, 2007, Roscoe received the attached grievance and letter demanding arbitration from Local 150. (Grievance Attached as Exhibit 5.) The grievance alleged that Roscoe is "not paying appropriate wages and fringe benefits as required by the CBA." (Ex. 5.)

15.   On May 24, 2007, I corresponded with Ms. Monica F. Martin Tyler from the American Arbitration Association, the case manager for the grievance. (Letter Attached as Exhibit 6.)  In that letter and in numerous correspondences following it, Roscoe has continually asserted that it is in no way affiliated with Local 150, or any union. (Ex. 6.)

16.   Local 150 has persisted with its demands for arbitration of its alleged grievance, claiming that Roscoe is bound, as a successor, to the NIMPA Agreement, by virtue of Article XXII, which states that "[i]n the event that the Company [Illinois Mining] sells or leases all, or substantially all of the assets of the Company . . . the Purchaser or Lessee shall be deemed to be a successor to this Agreement and be bound by the terms and conditions thereof." (Letter Attached as Exhibit 7.)

17.   Roscoe is not a party to the NIMPA Agreement, and until the letter of June 15, 2007, had no knowledge of the terms to which Local 150 was referring in its grievance of April 6, 2007. (Ex. 7.)

18.   In June of 2007, I contacted Mr. Thomas P. Emma, CFO of Illinois Mining, who confirmed my understanding that Article XXII does not apply to this situation, (Ex. 3), and was not discussed in the Lease Agreement between Roscoe and Illinois Mining.

19.   Despite continued correspondence with Ms. Martin-Tyler, the AAA has continued with administration of this matter. (Letter Attached as Exhibit 8.)

20.   Local 150 has continued to demand arbitration of this matter through the present.

21.   On October 5, 2007 the AAA appointed Mr. Steven M. Bierig as the arbitrator to hear the grievance. (Letter Attached as Exhibit 9.)

22.   On March 5, 2008, Roscoe received notice that the hearing before Arbitrator Bierig is scheduled for the morning of September 12, 2008. (Notice of Hearing Attached as Exhibit 10.)

### VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Margaret A. Bauch, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. I have personal knowledge of the above facts and would testify competently thereto if called upon.

Margaret A. Bauch

Executed: July 17, 2008.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the **AFFIDAVIT OF MARGARET A. BAUCH IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** was served upon the individual listed below on July 23, 2008, by facsimile and electronic mail.

      Bryan Diemer, Counsel for Defendant
      IUOE, Local 150, AFL-CIO
      6140 Joliet Road
      Countryside, IL 60525
      E-mail: bdiemer@local150.org
      Fax: (708) 588-1647

Respectfully submitted,


    /s/  Frederick L. Schwartz
    Frederick L. Schwartz (#06204341)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROSCOE ROCK AND SAND INC.,** | |
| Plaintiff, | No. 08-cv-4091 |
| v. | |
| **INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO,** | Hon. Judge Hart<br>Magistrate Judge Mason |
| Defendant. | |

### TABLE OF EXHIBITS FOR AFFIDAVIT OF MARGARET A. BAUCH

**Exhibit 1:**   Certified Election Results Dated March 28, 2002 from the National Labor Relations Board Certifying Vote of Roscoe's Employees Against Local 150.

**Exhibit 2:**   Excerpts from the Collective Bargaining Agreement Between the Northern Illinois Material Producers' Association and International Union of Operating Engineers, Local 150, AFL-CIO.

**Exhibit 3:**   Letter Dated June 29, 2007 to Ms. Marge Bauch from Mr. Thomas P. Emma, on Behalf of Illinois Mining Corporation Stating Quarry's Relation to Company's Total Assets.

**Exhibit 4:**   Lease Agreement Between Roscoe Rock & Sand, Inc. and Illinois Mining Company Concerning the Quarry on Pieper Road in Durand, Illinois.

**Exhibit 5:**   Grievance Dated April 6, 2007 and Attached Letter Demanding Arbitration.

**Exhibit 6:**   Letter Dated May 24, 2007 to Ms. Martin-Tyler from Ms. Marge Bauch Denying Roscoe's Affiliation with Local 150.

**Exhibit 7:**   Letter Dated June 15, 2007 to Ms. Martin-Tyler from Local 150 Alleging Article XXII of the NIMPA Agreement as Basis for Demanding Arbitration.

**Exhibit 8:**   Letter Dated February 20, 2008 to Parties from the American Arbitration Association Confirming the Continuation of Local 150's Demand for Arbitration of the Grievance.

**Exhibit 9:**   Letter Dated October 5, 2007 to Parties from the American Arbitration Association Appointing Steven Bierig as the Arbitrator in this Matter.

**Exhibit 10:**   Notice of Hearing Dated March 5, 2008 from the AAA Scheduling a Hearing for September 12, 2008 Before Arbitrator Steven Bierig.

# EXHIBIT  1

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
SUBREGION THIRTY-THREE

ROSCOE READY-MIX, INC.,
ROSCOE ROCK & SAND, INC.
AND BEE LINE READY-MIX

                  Joint Employers

and                                  Case 33-RC-4665
                                            Stipulated

TEAMSTERS LOCAL UNION NO. 325,
AFFILIATED WITH THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, AFL-CIO
AND INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 150, AFL-CIO

                        Joint Petitioners

## CERTIFICATION OF RESULTS OF ELECTION

An election has been conducted under the Board's Rules and Regulations. The Tally of Ballots shows that no collective bargaining representative has been selected. No timely objections have been filed.

As authorized by the National Labor Relations Board,

It is certified that a majority of the valid ballots have not been cast for any labor organization, and that no labor organization is the exclusive representative of the employees in the bargaining unit described below:

All production and operations employees, including but not limited to drivers and operators, employed by the Joint Employers at their facilities located in Roscoe, Belvidere, Durand and Pecatonica, Illinois; but excluding all office clerical employees, professional employees, managerial employees, guards and supervisors as defined in the Act.

Dated at Peoria, Illinois this March 28, 2002

                                  Ralph R. Tremain, RD
                                  Region 14

By:                                         
                                  Will J. Vance, Officer-In-Charge
                                  National Labor Relations Board
                                  Subregion Thirty-Three
                                  300 Hamilton Square, Suite 200
                                  Peoria, Illinois  61602

FORM NLRB-760
(12-62)

### UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

| | |
|---|---|
| ROSCOE READY-MIX, INC., ROSCOE ROCK & SAND, INC. AND BEE LINE READY-MIX<br><br>and<br><br>Joint Employers<br><br>TEAMSTERS LOCAL UNION NO. 325, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO AND INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO<br><br>Joint Petitioners | **Date Filed**<br>Case No. 33-RC-4665   2/07/02<br><br>Date Issued   3/20/02 |

**Type of Election**
*(Check one:)*

☒ Stipulation
☐ Board Direction
☐ Consent Agreement
☐ RD Direction

Incumbent Union *(Code)*

**(If applicable check either or both:)**

☐ 8(b) (7)
☐ Mail Ballot

## TALLY OF BALLOTS

The undersigned agent of the Regional Director certifies that the results of the tabulation of ballots cast in the election held in the above case, and concluded on the date indicated above, were as follows:

1. Approximate number of eligible voters ................................................................ 31

2. Number of Void ballots ................................................................ 1

3. Number of Votes cast for JOINT PETITIONERS ................................................................ 6

XXXXXXXXXXXXXXXXXXXX ................................................................

XXXXXXXXXXXXXXXXXXXX ................................................................

6. Number of Votes cast against participating labor organization(s) ................................................................ 23

7. Number of Valid votes counted (sum of 3, 4, 5, and 6) ................................................................ 29

8. Number of Challenged ballots ................................................................ 1

9. Number of Valid votes counted plus challenged ballots (sum of 7 and 8) ................................................................ 30

10. Challenges are (not) sufficient in number to affect the results of the election.

11. A majority of the valid votes counted plus challenged ballots (Item 9) has (not) been cast for _____

JOINT PETITIONERS _____

For the Regional Director   By: *Greg Pinsay*
Board Agent - Subregion 33

The undersigned acted as authorized observers in the counting and tabulating of ballots indicated above. We hereby certify that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, and that the results were as indicated above. We also acknowledge service of this tally.

For JOINT EMPLOYERS

For _____

For JOINT PETITIONERS

For _____

# EXHIBIT  2

# COLLECTIVE BARGAINING AGREEMENT

### between the

## NORTHERN ILLINOIS MATERIAL PRODUCERS ASSOCIATION

### and

## INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150 AFL-CIO



### Effective May 1, 2005 through April 30, 2010



exclusive bargaining agent of the employees within the classifications of work set forth in Article VI hereof and who are employed at the pits, yards, quarries and operations of the Companies that are located within the present geographic area of jurisdiction of the Union, for the purpose of collective bargaining with respect to rates of pay, hours and other conditions of employment. As a matter of jurisdiction, all work that has been performed by custom or practice, by employees of a Company within this particular industry shall continue to be so performed.

**Section 2 – Union Shop.** All employees shall be obligated to become members of the Union after the 30th, but not later than the 35th day of employment, the date of the execution of this Agreement or the effective date of this clause, whichever occurs later, as a condition of continued employment. All employees who are members of the Union shall maintain their membership in the Union as a condition of continued employment. Any employee who fails to become a member of the Union or fails to maintain his membership therein in accordance with the foregoing shall forfeit his right of employment, and the Company shall immediately discharge such employee, provided however, that the foregoing shall be strictly interpreted, construed and applied in accordance with the applicable provisions of the Labor-Management Relations Act of 1947, as amended.

## ARTICLE II
## GRIEVANCES AND ARBITRATION

**Section 1 –** A grievance shall consist of a difference or dispute between the Company and an employee ("employee grievance") or between the Company and the Union ("Union grievance") as to the interpretation or application of the terms of this Agreement which has been referred to this grievance procedure.

2

(a) To be valid, the grievance must be reduced to writing, signed by the employee in the case of an employee grievance, or the Union in the case of a Union grievance, and presented to the Company within two weeks following the occurrence of the event giving rise to the grievance.

(b) Each time limit set forth in a step of the grievance procedure must be adhered to (unless an extension is mutually agreed to within the original time limits) or the grievance shall be deemed to have been settled on the basis of the Company's answer at the preceding step, unless the failure to adhere to the time limits is caused by the Company.

**Section 2** - The grievance procedure shall be as follows:

**Step 1** - An effort shall be made to adjust the grievance by and between the employee having the grievance and his supervisor. The Company shall give a written answer to the grievance within seven (7) calendar days following presentation of the grievance to the Company.

**Step 2** - If the Company's answer does not resolve the grievance, the Business Representative of the Union and a representative of the Company shall meet and attempt to resolve the grievance within two (2) weeks following the Company's answer at Step 1 or from the date a union grievance is received, as the case may be. The Company shall give its answer in writing within seven (7) calendar days following this Step 2 meeting.

**Step 3** - If the Company's answer does not resolve the grievance, it may then be submitted to arbitration within two (2) weeks after conclusion of Step 2 in the following manner:

(a) The party desiring arbitration shall notify the other party in writing that it is demanding arbitration.

(b) Within seven (7) calendar days after the receipt of such demand, the Company and the Union shall jointly request from the American Arbitration Association a panel of arbitrators, but not less than seven (7), from which panel a single arbitrator shall be selected.

(c) Selection of the single arbitrator shall be made from the panel in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association.

(d) A mutually agreeable place and date for the hearing shall be arranged through the services of the American Arbitration Association.

(e) The matter shall then proceed to arbitration as quickly as possible and the arbitrator so selected shall hear all evidence and then render a decision based on the evidence and the Agreement. The arbitrator shall be bound by the terms and provisions of this Agreement and shall have authority to consider only grievances presenting an arbitrable issue under this Agreement. The Arbitrator shall have no authority to add to, subtract from, modify or amend any of the provisions of this Agreement. Furthermore, it is specifically agreed that no arbitrator shall have the authority to establish or modify any wage rate or job classification or authority to decide the appropriate classification of any employee. A decision of the arbitrator on any grievance within the scope of the issue submitted shall be final and binding on the Company, the Union and the employee or employees involved. The arbitrator's fee and expenses shall be paid equally by the parties to the arbitration. Each party shall pay its own expenses with respect to its own witnesses, stenographer

4

## MEMORANDUM OF AGREEMENT

# EXHIBIT 3



# Illinois Mining Corp.

41 Walter Court          Lake in The Hills, Illinois 60156          (847) 854-1555
                                                                    Fax (847) 854-1564

June 29, 2007

Marge Bauch
Roscoe Rock & Sand Inc.
5029 McCurry Road
P.O. Box 1027
Roscoe, IL 61073

Dear Marge:

Illinois Mining Corporation acquired the property on Pieper Rd in Durand Illinois in January of 2003. The purchase was to add to our strategic mining reserves. It became one of many properties we operated in the Northern Illinois region.

Over the course of the four years we owned and operated the property we incurred less than 1% of our overall payroll at that site. It was not and would never be considered all or substantially all of our assets or operations. It was determined to be a non-core holding and subsequently a deal was struck with Roscoe Rock and Sand Inc.

We do not believe that Article XXII of NIMPA even remotely applies in this situation as the property was not all or substantially all of Illinois Mining Corporation's assets.

Sincerely,

Thomas P. Emma
Chief Financial Officer

# EXHIBIT  4

Contract proposal between:
Illinois Mining Corp. / Duran Yard 39 & Roscoe Rock & Sand, Inc.
For Contract Purchase Agreement (CPA)

The detailed amounts of the purchase agreement are separate from this Contract Purchase Agreement (CPA).

This Contract Purchase Agreement (CPA) to begin (December 15th 2006 an ends December 15th 2008), running 2 consecutive 12 month periods for a duration up to 2 years without change. The Contract Purchase Agreement (CPA) can be canceled by either party with due notice for a justified cause. Whereby due notice for lease would be either party giving other party six months written notice*. Due notice for purchase of property could be verbal**.   Justified cause for cancellation of agreement is listed in contract***.

The royalty payment based on material solely produced by Roscoe Rock & Sand, Inc. after December 15th, 2006 shall be straight royalty payments made from Roscoe Rock & Sand, Inc. to Illinois Mining Corp. to total $.65 per ton for material removed from the face, not already stockpiled in the yard.   Royalty payments will be based on blasting records from Roscoe Rock & Sand, Inc. and will be reported to Illinois Mining Corp. as they occur but will be paid no more than 60 days after date of blasting. Royalty payments will in no way effect the final purchase prices of the property in the Contract Purchase Agreement (CPA).

The second form of payment will be based on Illinois Mining Corp.'s  stockpiled materials that have been blasted from the face and processed prior to December 15th, 2006 that no royalty payment has been made on.   Roscoe Rock & Sand, Inc. will be responsible for billing, loading, and collecting payment for the material sold after December 15th 2006. Monies paid to Illinois Mining Corp. by Roscoe Rock & Sand for sales of stockpiled materials, will be deducted from the final purchase price of the property in the Contract Purchase Agreement (CPA).

Stockpile payment to be made from Roscoe Rock & Sand, Inc. to Illinois Mining Corp. for stockpile materials sold, after December 15th 2006. Amount due to Illinois Mining Corp. would be based on the agreed upon Royalty Price, (as listed below) and paid to Illinois Mining Corp. no later than 90 days after date of sale, whereas, sale date being determined by the date material is hauled from the pit in its original or processed form.

In addition Roscoe Rock & Sand, Inc. is also responsible for payment of utilities at the Durand Facility during the duration of this contract.

Estimated amounts of said material, these are just estimates, are listed below...

| Material | Estimated ton's | Royalty Price | Roscoe Rock & Sand, Inc Suggested/Sale/Price***** |
|---|---|---|---|
| 1-1/2" | 7,000 ton's | $3.00 (21,000) | $4.50 (31,500) |
| 7/8" | 5,000 tons' | $3.50 (17,500) | $6.00 (25,000) |
| 3/8" Chips | 6,000 tons' | $3.50 (21,000) | $5.50 (30,000) |
| 3" | 6,000 tons' | $3.00 (18,000) | $4.50 (27,000) |
| CA-6 (new) | 14,000 tons' | $3.00 (42,000) | $4.50 (63,000) |
| CA-6 (old) | 6,000 tons' | $1.50 (9,000) | $2.50 (15,000) |
| Screening | 0 tons | $1.00 | N/A |
| 3" Minus | 6,000 tons | $1.00 (6,000) | $2.50 (15,000) |

Sub totals (134,500)      (206,500)

Difference of (72,000)

Estimated tons will not equal scaled material but if Roscoe Rock & Sand, Inc. disputes estimate this should be brought to Illinois Mining Corp.'s attention for adjustment on future record.

Loading, scaling, and billing of said material is the sole responsibility of Roscoe Rock & Sand, Inc. Roscoe Rock & Sand, Inc. agrees to leave a machine at the quarry that can be used for loading. The machine will be insured by Roscoe Rock & Sand, Inc. and Roscoe Rock & Sand, Inc. will supply Illinois Mining Corp. with a certificate of insurance. All customers should call Roscoe Rock & Sand, Inc. to coordinate for loading and scale use. Under this agreement Roscoe Rock & Sand will be solely responsible for all mining operations on the property for the materials afore mentioned in this contract

If at anytime during this two-year lease Contract Purchase Agreement (CPA) Roscoe Rock & Sand, Inc. exercises their purchase option for the property Roscoe Rock & Sand, Inc. will honor the currently existing land contract between Illinois Mining Corp. and Jim Blunt the tenant farmer.

At any time prior to Roscoe Rock & Sand, Inc. exercising their purchase option Illinois Mining Corp. will remain in full control of all property not being actively mined at the site and this agreement will in no way effect the already existing agreement between the tenant farmer, Jim Blunt, and Illinois Mining Corp.

Illinois Mining Corp. reserves the right to mine and/or produce specialty products for their own use i.e. flag stone, ledge rock, dry wall etc. Illinois Mining Corp. will not interfere with Roscoe Rock & Sand, Inc. production.

*If at any time Roscoe Rock & Sand Inc. expresses no further interest in purchasing the Durand site, six months written notice for cancellation should be given prior to May 15th of the same year with consideration time for Roscoe Rock & Sand, Inc. to remove any stockpiles of material that have been made prior to December 15th of that same year will extend till Jan 15th of the following year, this consideration will be part of the contract purchase (CPA).

**Under this purchase agreement Roscoe Rock & Sand Inc. has first option to purchase the property for an agreed upon price or match any offer greater than the agreed upon

amount made to Illinois Mining Corp. for the duration of this contract being December 15th 2006 to Dec. 15th 2008. If at any time prior to the December 15th 2008 date Roscoe Rock & Sand Inc. expresses no further interest in purchasing the property, Illinois Mining Corp. can find another buyer for the property.

*** Justified cause for Illinois Mining Corp. would be, after Roscoe Rock & Sand Inc. has failed to exercise their option to purchase the property, sale of property by Illinois Mining Corp. to another buyer. Justified cause for Roscoe Rock & Sand, Inc., OPEN.

***** Illinois Mining Corp. will be allowed to purchase materials produced by Roscoe Rock & Sand, Inc. after December 15th 2006, for resale to its own customers, (based on availability), for an agreed upon suggested sale price between the two parties. This price may be adjusted from year to year by Roscoe Rock & Sand, Inc. giving Illinois Mining Corp. written notice of increases with consideration given for projects already started.

# EXHIBIT 5

# INTERNATIONAL UNION OF OPERATING ENGINEERS
### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M
#### AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT



**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER

(708) 482-8800 • FAX (708) 482-7155
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3993

April 6, 2007

*Via Fax (815) 389-1858 and*
*(815) 389-1143*
CM 7005 3110 0003 7554 3790

Mr. Stephen Bauch
Roscoe Rock & Sand
5029 McCurry Road
Roscoe, Illinois 61073

RE:   **Roscoe Rock & Sand, Inc.** – Violations of Article(s) VI, Section 1 & 8; Article XVI,
Sections 1, 2, 3, 5, & 6; and Article XXII of the Northern Illinois Material Producers
Association Agreement effective May 1, 2005 through April 30, 2010;
Union File No. 07-044              *(Members – Local 150 Out of Work List)*
                                              *(Loader)*

Dear Mr. Bauch:

Please take notice, that the Union hereby demands Arbitration in the above-referenced matter.

Sincerely,
William E. Dugan
PRESIDENT-BUSINESS MANAGER

By:  Steven M. Cisco
Recording-Corresponding Secretary

SMC/hca

cc:   Steven Russo, Business Representative – Dist. 5
Dale Pierson, General Counsel

# INTERNATIONAL UNION OF OPERATING ENGINEERS
### LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M
###### AFFILIATED WITH THE A.F.L.-C.I.O. AND BUILDING TRADES DEPARTMENT

**WILLIAM E. DUGAN**
PRESIDENT-BUSINESS MANAGER



(708) 482-5000 · FAX (708) 482-7195
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525-3992

# GRIEVANCE

Use additional sheets if necessary)

Grievant's Name: Local 150 and all affected bargaining unit members.       Date Filed: MARCH 27, 2007

## STEP ONE / STEP TWO (If Union Grievance)

Date of Incident March 19th 2007 and ongoing at
Durand Location
18484 Pieper Rd.
Durand, IL 61024

Article(s) & Section(s) of Contract Violated:   Including, but not limited to, NIMPA Contract
Article VI    Sections 1 and 8
Article XVI  Sections 1,2,3,5,6
Article XXII

Brief Statement of Facts: Witnessed Roscoe employee's loading their own trucks on March 19, 2007 took pictures of them doing so, talked to the man on the loader said he was not an Operating Engineer and that he was running Roscoe's loader. I asked him if this was still Illinois Mining he said yes but Roscoe was leasing the property.   Roscoe is not paying wages and fringe benefits as required by the CBA, In addition, Roscoe is subcontracting to non-signatories in violation of CBA.

Remedy Sought:      Make whole per CBA and all other Appropriate remedies

Presented To:   Roscoe Rock and Sand
                5029 McCurry Road              Time and Date:  March 27, 2007
                Roscoe, IL 61073 .

Method of Delivery;  Faxed to (815) 389-1143
And also mailed to 5029 McCurry Road. Roscoe, IL 61073

_Stephen Russo_
Representative's Signature

## EMPLOYER'S RESPONSE

Employer's Representative Signature                                    Positions

Response Recipient                                                     Date

## STEP TWO / STEP THREE ( If Union Grievance)

Presented To:                              Date and Time:

Representative's Signature

# EXHIBIT  6

Roscoe Rock and Sand, Inc.
5029 McCurry Road
P.O. Box 1027
Roscoe, IL 61073
(815) 389-1858
FAX 815 389 1143

May 24, 2007

American Arbitration Association
Attention: Monica F. Martin-Tyler
American Center Building
Suite 1150
27777 Franklin Road
Southfield, MI 48034

     RE: IUOE, Local 150, AFL-CIO
         #07-044 – Loader Subcontracting
         Case# 51-300-00552-07 02 MFT-C

Dear Ms. Martin-Tyler:

Per our recent conversation, I submit the following:

Roscoe Rock and Sand does not have any affiliation with any union. Our employees are not members of any union. Therefore, we do not believe there is any case regarding the above captioned reference for arbitration.

Your cooperation in closing this matter will be appreciated.

At your convenience, please review the invoice of 04/27/07 sent to us and cancel any amount due.

Sincerely yours,

Margaret A. Bauch
Sec. Treas.

Enc. (1)

# EXHIBIT 7

# INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE AFL-CIO



6140 JOLIET ROAD
COUNTRYSIDE, IL 60525

708-579-6663
FAX 708-588-1647

DALE D. PIERSON
ELIZABETH A. LaROSE
MELINDA S. HENSEL
ROBERT E. ENTIN

**LEGAL DEPARTMENT**

June 15, 2007

BRYAN P. DIEMER
CHARLES R. KISER
MARC R. POULOS
JAIME J. OLSON
ROBERT G. REITER, JR.
JENNIFER A. NIEMIEC
STEVEN M. STEWART

<u>VIA FACSIMILE AND REGULAR MAIL</u>
Ms. Monica Martin-Tyler
American Arbitration Association
American Center Building
27777 Franklin Road, Suite 1150
Southfield, MI 48034-8208

      Re:    IUOE, Local 150, AFL-CIO and Roscoe Rock & Sand
           AAA No. 51 300 00552 07
           Grievance No. 07-044 (Loader Subcontracting)
           Our File No. GA-00443

Dear Ms. Martin-Tyler:

This in response to your letter of June 5, 2007, regarding the above matter.

On January 7, 1990, Illinois Mining Corporation signed a Memorandum of Agreement with Local 150 in which Illinois Mining Corp. adopted the terms of the Northern Illinois Material Producers' Agreement ("NIMPA"). Article XXII of NIMPA provides:

> In the event that the Company sells or leases all, or substantially all of the assets of the Company to a Purchaser or Lessee and the Purchaser or Lessee continues to operate the business in the same manner and on the same basis as prior to the sale, then the Purchaser of Lessee shall be deemed to be a successor to this Agreement and be bound by the terms and conditions thereof to the same extent as was the Company.

Illinois Mining Corp. has leased all or substantially all of its assets at its Roscoe, Illinois, quarry to Roscoe Rock & Sand. Therefore, by virtue of Article XXII in NIMPA, Roscoe Rock & Sand is bound by the terms and conditions of NIMPA to the same extent as was Illinois Mining Corp.



INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL UNION No. 150
**LEGAL DEPARTMENT**

Ms. Monica Martin-Tyler
June 15, 2007
Page 2

Roscoe Rock & Sand's position that it "does not have any affiliation with" Local 150 is therefore without merit. Please provide the parties with a panel of arbitrators at your earliest convenience.

Sincerely,

IUOE, LOCAL 150, AFL-CIO
LEGAL DEPARTMENT

Bryan P. Diemer

BPD/lms
cc:     Steven M. Cisco
        Steve Russo *(via facsimile)*

# EXHIBIT 8



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Michigan Labor Center*

February 20, 2008

American Center Building, Suite 1150, 27777 Franklin Road, Southfield, MI 48034-8208
telephone: 800-891-4741 facsimile: 248-352-3147
internet: http://www.adr.org/

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL 60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL 60606

Re: 51 300 00552 07
    IUOE, Local 150, AFL-CIO
    and
    Roscoe Rock & Sand

Grievances:    #07-044 – Loader Subcontracting

Dear Parties:

The Arbitrator is now offering August 27 or September 12, 2008 for a hearing date.

The parties are requested to advise the undersigned immediately of their availability on said date(s). Absent a response by March 3, 2008, we will assume the date(s) to be satisfactory and a formal Notice of Hearing will be forwarded promptly.

Thank you for your cooperation.

Very truly yours,

Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

cc:
    Steven M. Bierig, Esq.

# EXHIBIT 9

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Michigan Labor Center*

October 5, 2007

American Center Building, Suite 1150, 27777 Franklin Road, Southfield, MI 48034-8208
telephone: 800-891-4741 facsimile: 248-352-3147
internet: http://www.adr.org/

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL 60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL 60606

Re: 51 300 00552 07
    IUOE, Local 150, AFL-CIO
    and
    Roscoe Rock & Sand

Grievances:    #07-044 - Loader Subcontracting

Dear Parties:

This is to advise the parties that Steven M. Bierig has been appointed Arbitrator in the above-captioned matter. The Arbitrator has agreed that for this arbitration the per diem for each day of hearing or part thereof, and for all time devoted to considering evidence and the preparation of the Award and Opinion is at the rate stated on the enclosed resume. This Arbitrator's cancellation policy is also described in the resume.

The Arbitrator is offering January 30 or February 6, 2008 for a hearing date.

The parties are requested to advise the undersigned immediately of their availability on said date(s). Absent a response by October 15, 2007, we will assume the date(s) to be satisfactory and a formal Notice of Hearing will be forwarded promptly.

Very truly yours,

Monica F. Martin-Tyler
Case Manager
248 352 5500
tylerm@adr.org

cc:    Steven M. Bierig, Esq.

# EXHIBIT  10

# AMERICAN ARBITRATION ASSOCIATION
## Notice of Hearing

March 5, 2008

Bryan Diemer
IUOE, Local 150, AFL-CIO
6140 Joliet Road
Countryside, IL 60525

Terence P. Smith
Connelly Sheehan Harris LLP
150 South Wacker Drive
Suite 1600
Chicago, IL 60606

Re: 51 300 00552 07
    IUOE, Local 150, AFL-CIO
    and
    Roscoe Rock & Sand

Grievances:   #07-044 - Loader Subcontracting

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

Place:  American Arbitration Association
       225 N. Michigan Ave.
       Suite 1840
       Chicago, IL 60601

Date:   September 12, 2008
Time:   10:00 AM
Before: Steven M. Bierig

NOTE:

Please attend promptly with your witnesses and be prepared to present your proofs.

Monica F. Martin-Tyler<br>
Case Manager<br>
248 352 5500<br>
tylerm@adr.org

NOTICE: The arbitrator(s) have arranged their schedule and reserved the above date(s) based on the advice of the parties. Therefore, every effort should be made to appear on the date(s) scheduled. In the event that unforeseen circumstances make it impossible to attend the hearing as scheduled, a party requesting a postponement should obtain the agreement of the other party. If there is no mutual agreement, the arbitrator(s) will make a determination. All requests for postponements must be communicated to the Case Manager not the arbitrator. There should be no communication between the parties and the neutral arbitrator(s) other than at oral hearings. In some instances, postponements are subject to cancellation fees by the arbitrator(s). Any party wishing a stenographic record must make arrangements directly with the stenographer and notify the other parties in advance of the hearings.

cc:    Steven M. Bierig, Esq.