IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROSCOE ROCK AND SAND, INC. ) | |
| ) | |
| Plaintiff, ) | Case No. 08-cv-4091 |
| ) | |
| v. ) | Judge Hart |
| ) | Magistrate Judge Mason |
| INTERNATIONAL UNION OF OPERATING ) | |
| ENGINEERS, LOCAL 150, AFL-CI0 ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

On July 18, 2008, Plaintiff Roscoe Rock and Sand, Inc. ("Roscoe") filed its Complaint and Petition for Declaratory Judgment and Permanent Injunction to Stay Arbitration against Defendant International Union of Operating Engineers, Local 150, AFL-CIO. Local 150 now moves to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

**STATEMENT OF FACTS**

Illinois Mining Company is signatory to a collective bargaining agreement with Local 150 (Complaint ¶8). That collective bargaining agreement contains a "successors and assigns" clause which provides that in the event Illinois Mining sells or leases all, or substantially all of its assets, the purchaser or lessee assumes the agreement and is bound to its terms and conditions (Complaint ¶12). In 2007, Roscoe began leasing a quarry from Illinois Mining Company (Complaint ¶9). Local 150 took the position that, upon leasing the quarry from Illinois Mining, Roscoe assumed the agreement originally executed by Illinois Mining by virtue of the "successors and assigns clause" (Complaint, Ex. D).

On or about March 27, 2007, Local 150 filed a grievance against Roscoe for failing to comply with the terms of the collective bargaining agreement (Complaint ¶¶14, 15; Ex. F). In particular, Local 150's grievance claimed "that Roscoe is bound, as a successor, to the NIMPA CBA, and was 'not paying appropriate wages and fringe benefits as required by the CBA'" (Complaint ¶14). In addition, Local 150's "grievance also allege[d] that 'Roscoe is subcontracting to non-signatories in violation of [the] CBA'" (Complaint ¶14). Thereafter, Local 150 made a timely demand for arbitration (Complaint ¶16, Ex. F). The arbitration is currently scheduled for September 12, 2008 (Complaint ¶18).

## STANDARD OF REVIEW

Rule 12(b)(1) provides for the dismissal of an action for lack of subject-matter jurisdiction. United Phosphorous, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." Id. A Rule 12(b)(6) motion allows a court to dismiss a matter when the plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." Pugel v. Univ. of Ill., 378 F.3d 659, 662 (7th Cir. 2004). Although the pleading requirements under FRCP 8 are minimal, a plaintiff can plead himself out of court by including factual allegations that show his legal rights were not invaded. Pugel, 378 F.3d at 667.

**I.    This Court Should Dismiss Count One (Declaration of Non-Signatory Status).**

Plaintiff brings Count I pursuant to the Declaratory Judgment Act. The gravamen of Roscoe's Declaratory Judgment Act claim is that Roscoe is not bound to any duties or obligations arising under the collective bargaining agreement (Complaint ¶20). Therefore, Roscoe seeks a judgment declaring that the collective bargaining agreement is "unenforceable and void" as to Roscoe (Complaint ¶21). Ultimately, Roscoe seeks to enjoin permanently the

arbitration currently scheduled for September 12, 2008 (Complaint, p 6).  This Court should dismiss Count I pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

      **A.     This Court Lacks Subject-Matter Jurisdiction Over Count I.**

Federal district courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis."  Exxon Mobile Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552 (2005).  The Declaratory Judgment Act is procedural only and does not expand a court's subject-matter jurisdiction, Skelly Oil Co. v. Phillips Petro. Co., 339 U.S. 667, 671-72 (1950); nor does it supply a court with subject matter jurisdiction, In re: VMS Securities Litigation, 103 F.3d 1317, 1327 (7th Cir. 1996).

This Court may not enjoin the arbitration.  Section 1 of the Norris-LaGuardia Act provides that "[n]o court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute. . . ." 29 U.S.C. §101.  The term 'labor dispute' is defined as (29 U.S.C. §13(c)):

> any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, challenging, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

In this case, Roscoe concedes that Local 150's grievance alleged, among other things, that Roscoe did not pay "appropriate wages and fringe benefits as required by the CBA" (Complaint ¶14).  The parties are plainly involved in a labor dispute as that term is defined in the Norris-LaGuardia Act.  And the matter is properly before an arbitrator for resolution.  Since this case "involve[es] or grow[s] out of a labor dispute," the Norris-LaGuardia Act divests this Court of jurisdiction to enjoin the arbitration.

Roscoe seeks a ruling from this Court declaring that it is not bound to the collective bargaining agreement by virtue of the "successors and assigns" clause of the agreement. In addition, Roscoe asks this Court to enjoin the pending arbitration. Questions of substantive arbitrability may not be decided by a court *prior* to an arbitration. This is particularly the case when the question of arbitrability depends on an interpretation of a collective bargaining agreement. For example, in AT&T Broadband, LLC v. Int'l Bhd. of Elec. Workers, 317 F.3d 758, 763 (7th Cir. 2003), the Seventh Circuit confirmed that the Norris-LaGuardia Act prevents a district court from enjoining an arbitration of a labor dispute. The Seventh Circuit instructed that "if it is necessary to litigate about arbitrability, then arbitrate the underlying dispute, and finally return to court to decide whether the arbitration award should be enforced." Id. at 762. Under AT&T Broadband, Plaintiff's declaratory judgment claim is not yet ripe, for this Court may not decide questions of arbitrability *prior* to an arbitration and may under no circumstances enjoin a labor arbitration.

Roscoe concedes that it leased a quarry from the signatory contractor, Illinois Mining (Complaint ¶9). Roscoe concedes that the applicable collective bargaining agreement contains a "successors and assigns" clause which provides that a lessee may become bound to the collective bargaining agreement under certain circumstances (Complaint ¶12). The collective bargaining agreement also contains a grievance procedure that culminates in binding arbitration (Ex. A). Whether Roscoe is bound to the collective bargaining agreement depends on an interpretation of the "successors and assigns" clause in that agreement. In AT&T Broadband, the Seventh Circuit noted that Section 8 of the Norris-LaGuardia Act prohibits a district court from issuing an injunction when a plaintiff has failed to exhaust arbitral remedies. 317 F.3d at 762. In other words, Roscoe must exhaust the grievance procedure (including arbitration) before pursuing a

4

judicial determination of its obligations under the collective bargaining agreement. This Court lacks subject matter jurisdiction to interpret the "successors and assigns" clause and enter any order regarding the contractual obligations of the parties *prior* to the arbitration. Plaintiff's Declaratory Judgment Act claim must be dismissed under Rule 12(b)(1).

### B.    Plaintiff Failed to State a Claim Under Count One.

As explained above, Local 150 filed a grievance in which it alleged that Roscoe violated the terms of the parties' collective bargaining agreement. The Declaratory Judgment Act, "provides a means for adjudicating the rights of parties prior to the point at which the dispute can be adjudicated by a suit for damages or other affirmative relief." Wireless Mktg. Corp. v. Cherokee, Inc., Case No. 98 C 1406, 1998 U.S. Dist. LEXIS 16114 at *5 (N.D. Ill. Oct. 6, 1998) (emphasis added), citing, Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987). The "primary purpose of [the Declaratory Judgment Act] is 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued.'" Anderson v. Capital One Bank, 224 FRD 444, 448 (N.D. Ill. 2004), quoting, Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1167-68 (7th Cir. 1969); see also Steffel v. Thompson, 415 U.S. 452, 480 (1974) (Rehnquist, J. concurring) ("the declaratory judgment procedure is an alternative to the [plaintiff's] pursuit of the arguably illegal activity"). In this case, Local 150 has already initiated grievance proceedings against Plaintiff; the damage has already accrued. Plaintiff must now present its arguments to the arbitrator.

**II.     This Court Should Dismiss Count Two:   (Permanent Injunction to Stay Arbitration).**

Count Two is styled as a "permanent injunction to stay arbitration." Notably, "[a]n injunction is a remedy, not a cause of action." Noah v. Enesco Corp., 911 F.Supp. 305, 307 (N.D. Ill. 1995). In Noah, this Court held that plaintiff failed to state a claim in Count IV of his complaint "merely by stating that he [was] entitled to injunctive relief." Id. Without an underlying cause of action to support that count in the complaint, this Court held that plaintiff "assert[ed] no claim upon which injunctive or any other type of relief may be granted." See also Walker v. Bankers Life and Casualty Co., Case No. 06 C 6906, 2007 U.S. Dist. LEXIS 22818 at *11 (N.D. Ill. March 28, 2007) (this Court dismissed count in plaintiff's complaint that sought preliminary and permanent injunctive relief that was not supported by a substantive underlying claim). Plaintiff's Count Two must therefore be dismissed under Rule 12(b)(6) since it does not contain a substantive underlying cause of action.

**III.    This Court Should Dismiss Count Three (Attorneys Fees and Costs).**

In Count Three, Plaintiffs seek attorneys' fees and costs pursuant to Section 303 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §187. Count Three must be dismissed for three reasons. First, attorneys' fees and costs are remedies; neither constitutes a separate independent cause of action-- Count Three should be dismissed on this basis alone. Second, attorneys' fees are not recoverable as damages in suits brought under Section 303 of the LMRA. Bennett v. Local Union No. 66, 958 F.2d 1429, 1440, n. 9 (7th Cir. 1992), citing Summit Valley Industries, Inc. v. Local 112, United Bhd. of Carpenters, 456 U.S. 717 (1982). Finally, despite references to Sections 301 and 303 of the LMRA, 29 U.S.C. §§185, 187, Plaintiff has not pled violations of either section of the LMRA. See Bell Atlantic Corp. v. Twonbly, __ U.S. __,

127 S.Ct. 1955, 1964-65 (2007) ("A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions. . ."). Regardless, even assuming Plaintiff pled valid claims under Section 301 or Section 303, attorneys' fees are not available under either statutory provision. Count Three should be dismissed with prejudice in its entirety.

## CONCLUSION

For all the foregoing reasons, Local 150 respectfully requests that this Court dismiss Plaintiff's Complaint and Petition for Declaratory Judgment and Permanent Injunction to Stay Arbitration in its entirety.

Date: August 11, 2008                                    Respectfully submitted,

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 150, AFL-CIO


By:   s/Bryan P. Diemer
_____
One of the Attorneys for Defendant Local 150

Attorneys for Defendant:
Dale D. Pierson
Bryan P. Diemer
IUOE LOCAL 150
LEGAL DEPARTMENT
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

**CERTIFICATE OF SERVICE**

  The undersigned, an attorney of record, hereby certifies that on August 11, 2008, he electronically filed ***Defendant's Memorandum of Law in Support of its Motion to Dismiss*** with the Clerk of Court using the CM/CM/ECF system which sent notification to the following:

Fredrick L. Schwartz<br>
Alan A. Satyr<br>
LITTLER MENDELSON, PC<br>
200 N. LaSalle Street<br>
Suite 2900<br>
Chicago, Illinois 60601

            By: s/Bryan P. Diemer
               One of the Attorneys for Defendant Local 150

Attorneys for Defendant:
Dale D. Pierson
Bryan P. Diemer
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

LEXSEE 1998 U.S. DIST. LEXIS 16114

**WIRELESS MARKETING CORPORATION, an Illinois corporation, Plaintiff, v. CHEROKEE INC., a Delaware corporation, and SPELL C. LLC, a Delaware limited liability company, Defendants.**

No. 98 C 1406

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*1998 U.S. Dist. LEXIS 16114*; *48 U.S.P.Q.2D (BNA) 1693*

**October 5, 1998, Decided**
**October 6, 1998, Docketed**

**DISPOSITION:** [*1] Defendants' motion to dismiss granted.

**COUNSEL:** For WIRELESS MARKETING CORPORATION, plaintiff: Thomas K. Stine, Micheal D. Lake, Linda A. Kuczma, Monique Ann Morneault, Wallenstein, Wagner & Hattis, Ltd., Chicago, IL.

For CHEROKEE INC, SPELL C. LLC, defendants: Roger L. Price, Daniel Charles Curth, Marlene Ann Smith, D'Ancona & Pflaum, Chicago, IL.

**JUDGES:** GEORGE M. MAROVICH, UNITED STATES DISTRICT COURT.

**OPINION BY:** GEORGE M. MAROVICH

**OPINION**

*MEMORANDUM OPINION AND ORDER*

On March 6, 1998, Plaintiff Wireless Marketing Corporation ("Wireless") filed its original Complaint in this action for declaratory judgment of trademark non-infringement against Defendant Cherokee Inc. ("Cherokee"). On March 13, 1998, Wireless filed a First Amended Complaint naming Spell C. LLC ("Spell") as an additional defendant. In between Wireless's Complaints, on March 10, 1998, Defendant Spell filed a trademark infringement action against Wireless in the Central District of California ("the California action").

Two federal courts are now concurrently considering what is essentially the same dispute: whether Wireless is engaging in trademark infringement. Cherokee and Spell (collectively referred to as "Defendants") [*2] now move to dismiss or, in the alternative, transfer this declaratory judgment action. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

*BACKGROUND*

Wireless, an Illinois corporation, markets and distributes electronic communication devices and equipment including CB radios, power inverters, and hand-held walkie-talkie radios using the mark "CHEROKEE." Defendant Cherokee, a Delaware corporation with its principal place of business in California, asserts ownership of the mark "CHEROKEE" for various consumer products, including clothing and footwear. Defendant Spell, a Delaware corporation having its principal place of business in California, is an assignee of Cherokee's rights and obligations under a license agreement.

On September 24, 1997, Cherokee sent a letter to Wireless asserting its rights to the CHEROKEE trademark and expressing its concern that Wireless's CHEROKEE CB radios would be associated with Cherokee's products. On October 7, 1997, Wireless's attorneys responded with a letter dated October 7, 1997, stating that Wireless did not believe that a conflict existed between Wireless's use of the CHEROKEE mark and Cherokee's trademark registrations [*3] and use.

On or about January 22, 1998, Wireless received a letter from Cherokee's attorneys in which Cherokee renewed its allegation of trademark infringement. In this letter, Cherokee requested written confirmation within ten days that Wireless would stop using the CHEROKEE mark or otherwise Cherokee's attorneys would "advise [their] client to take appropriate steps to protect its valuable trademark rights." On February 3, 1998, Wireless's attorneys responded, reasserting Wireless's belief that it was not infringing Cherokee's trademarks and products.

Case 1:08-cv-04091     Document 14-2     Filed 08/11/2008     Page 2 of 3

Page 2
1998 U.S. Dist. LEXIS 16114, *; 48 U.S.P.Q.2D (BNA) 1693

On February 11, 1998, Cherokee's attorneys sent another letter to Wireless reiterating Cherokee's demand that Wireless change its mark. Cherokee requested an answer within ten days. On February 20, 1998, Wireless's attorneys responded, stating:

> Our client requires additional time in which to determine its options, including consideration of changing its mark and the other matters raised in your letter. We should be able to formally respond to your letter by March 6, 1998.

On March 6, 1998, Wireless "formally responded" by filing this declaratory judgment action against Cherokee (and added Spell as a defendant one week [*4] later). On March 10, 1998, Spell filed the California action alleging trademark infringement against Wireless.

Defendants now move to dismiss this declaratory judgment action or, in the alternative, have it transferred for consolidation with the California action. Defendants move to dismiss based on two grounds: (1) this Court should decline to exercise jurisdiction under the Declaratory Judgment Act because of the California action which is addressing the merits of the trademark infringement claim; and (2) this court lacks general personal jurisdiction over the Defendants. Because this Court declines, in its discretion, to exercise its jurisdiction under the Declaratory Judgment Act, it need not address the personal jurisdiction or venue arguments.

DISCUSSION

I. *Standards for Motion to Dismiss*

When reviewing a motion to dismiss, the Court examines the sufficiency of the complaint rather than the merits of the lawsuit. *Triad Assoc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence that supports the claims." *Scheuer v. Rhodes, 416 U.S.* [*5] *232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*. A motion to dismiss will be granted only if the Court finds that the plaintiff can put forth no set of facts that would entitle her to relief. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir. 1993)*; *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. On a motion to dismiss, the Court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well-pleaded facts are true. *See Dimmig v. Wahl, 983 F.2d 86, 87 (7th Cir. 1993)*.

II. *Jurisdiction under the Declaratory Judgment Act*

The Declaratory Judgment Act, *28 U.S.C. § 2201(a)*, provides a means for adjudicating the rights of parties prior to the point at which the dispute can be adjudicated by a suit for damages or other affirmative relief. *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749 (7th Cir. 1987)*. The underlying purposes of declaratory judgment actions "are to 'clarify and settle the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Id. at 749* (quoting [*6] Borchard, *Declaratory Judgments* 299 (2d ed. 1941)).

Federal courts have broad discretion over whether to accept or decline jurisdiction under the Declaratory Judgment Act. *See, e.g., Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942)*; *In re VMS Sec. Litig., 103 F.3d 1317, 1327 (7th Cir. 1996)* (collecting cases). No bright line test currently exists to direct a court in determining whether to accept or decline such jurisdiction. Rather, the decision calls for "discretion hardened by experience into rule." *Tempco, 819 F.2d at 749*.

A declaratory judgment is appropriate where "a party desires a declaration of the legal effect of a proposed or past course of action," but any prospect of judicial resolution of the issue is uncertain or remote. *Tempco, 819 F.2d at 749*. Parties should not, however, be permitted "to distort the purpose of an action for declaratory judgment by using it as a vehicle to secure a forum of its own choosing." *Associated Mills, Inc. v. The Regina Co., Inc., 675 F. Supp. 446, 448 (N.D. Ill. 1987)*. Two cases in which declaratory judgment would be properly exercised include: (1) a controversy that has progressed [*7] to the point that one party could invoke a coercive remedy but does not, and (2) a controversy which has not yet ripened, but which poses problems of unfairness or inefficiency in requiring the parties to wait for a decision. *Tempco, 819 F.2d at 749*.

Here, Defendants argue that this Court should decline to exercise jurisdiction under the Declaratory Judgment Act because Wireless filed this declaratory judgment action in anticipation of the infringement action. Relying on the Seventh Circuit's decision in *Tempco Elec. Heater Corp. v. Omega Eng'g, 819 F.2d 746, 749 (7th Cir. 1987)*, Defendants allege that the plaintiff "raced to the courthouse" to file the initial declaratory judgment action. Defendants argue that such an improper "preemptive strike" amounts to forum shopping, and that the declaratory judgment must yield to the California infringement action.

This Court agrees with Defendants that *Tempco* controls the disposition of this case. In *Tempco*, the plaintiff and defendant disputed whether the plaintiff's use of a certain symbol infringed defendant's trademark.

Case 1:08-cv-04091   Document 14-2   Filed 08/11/2008   Page 3 of 3

Page 3

1998 U.S. Dist. LEXIS 16114, *; 48 U.S.P.Q.2D (BNA) 1693

*Id. at 746-47*. Unable to resolve the dispute to its satisfaction, the defendant notified the plaintiff **[*8]** that it would be forced to file an action to protect its interests. On the same day that it received the letter, the plaintiff filed a declaratory judgment action. Four days later, the defendant filed an infringement action in another district. The defendant then moved to dismiss the declaratory judgment action, and the district court granted the motion. *Id*.

On appeal, the Seventh Circuit affirmed the district court's decision to dismiss the declaratory judgment action. The Seventh Circuit noted that "a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id. at 749*. Nevertheless, because the defendant in *Tempco* had promptly filed its infringement suit against the plaintiff, the Seventh Circuit determined that the defendant had not engaged in such conduct. Based on the facts of *Tempco*, the Seventh Circuit concluded that a declaratory judgment would serve no useful purpose, and that it was proper for the court to decline to exercise its discretionary jurisdiction over the case. *Id.*

Since *Tempco*, at least **[*9]** two other courts in this district have declined to exercise jurisdiction in nearly identical circumstances. In *Associated Mills, Inc. v. Regina Co., 675 F. Supp. 446 (N.D. Ill. 1987)*, the plaintiff filed a declaratory judgment action one day after receiving a letter from the defendant demanding that plaintiff cease infringing defendant's copyright. The court held that the defendant's filing of an infringement action twelve days after the filing of a declaratory judgment action obviated the need for the declaratory judgment action. Accordingly, the court dismissed the declaratory judgment action. *Id. at 447-48*.

Similarly, in *Successories Inc. v. Arnold Palmer Enterp., Inc., 990 F. Supp. 1044 (N.D. Ill. 1998)*, the plaintiff filed a declaratory judgment action after receiving letters requesting that it cease the sale of allegedly infringing merchandise. Six days later, the defendant filed a trademark infringement action against the plaintiff. Again, the court dismissed the declaratory judgment action after finding that the trademark infringement action made the declaratory judgment action unnecessary. *Id. at 1047*.

Here, Wireless attempts to distinguish *Tempco* by **[*10]** arguing that *Tempco* merely carved out an exception whereby a district court may decline jurisdiction when a party clearly files a declaratory judgment action as a preemptive strike. Wireless denies anticipating any formal infringement action by the defendants, arguing that it was "rendered helpless and immobile" throughout the duration of negotiations with Cherokee. Wireless argues that the specific timing of settlement negotiations as well as the use of language more explicitly indicative of impending litigation in *Tempco* distinguish it from the case at bar.

The Court finds Wireless's attempt to distinguish *Tempco* to be unconvincing. Indeed, the *Successories* court rejected the same argument, stating: "Notwithstanding whether the court characterizes [the declaratory judgment action] as anticipatory or not, [the] prompt filing of the infringement action . . . obviated the need for the declaratory judgment action." *Successories, 990 F. Supp. at 1047*. See also *Tempco, 819 F.2d at 749*; *Associated Mills, 675 F. Supp. at 448*. And, in any event, this Court finds, like the *Successories* court did, that Wireless's filing was, in fact, in anticipation of Spell's **[*11]** infringement action.

In conclusion, the Court, in its discretion, declines to exercise jurisdiction under the Declaratory Judgment Act.

*CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss is granted.

ENTER:

GEORGE M. MAROVICH

UNITED STATES DISTRICT COURT

DATED: Oct. 5, 1998

LEXSEE 2007 US DIST LEXIS 22818

**HOLLY WALKER, individually, and on behalf of all others similarly situated, and on behalf of the General Public, Plaintiff, v. BANKERS LIFE AND CASUALTY COMPANY, an insurance company domiciled in the State of Illinois, Defendant.**

Civil Action No.: 06 C 6906

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 22818*

**March 28, 2007, Decided**

**SUBSEQUENT HISTORY:** Class certification granted by *Walker v. Bankers Life & Cas. Co., 2007 U.S. Dist. LEXIS 73502 (N.D. Ill., Oct. 1, 2007)*

**COUNSEL: [*1]**  For Holly Walker, individually, and on behalf of all others similarly situated, and on behalf of the General Public, Plaintiff: Daniel A Crawford, LEAD ATTORNEY, Fernando A Vincente, LEAD ATTORNEY, John N Quisenberry, LEAD ATTORNEY, Robert J Drexler, Jr., LEAD ATTORNEY, Quisenberry Law Firm, Los Angeles, CA; Henry G Weinstein, LEAD ATTORNEY, The Quisenberry Law Firm, Los Angeles, CA; Douglas M. Werman, Maureen Ann Bantz, Werman Law Office, P.C., Chicago, IL.

For Bankers Life And Casualty Company, an insurance company domiciled in the State of Illinois, Defendant: John Anthony Ybarra, LEAD ATTORNEY, Shanthi V. Gaur, LEAD ATTORNEY, Stephanie Seay Kelly, Littler Mendelson, P.C., Chicago, IL; Tony R Skogen, LEAD ATTORNEY, Littler Mendelson, Los Angeles, CA.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Holly Walker, an insurance agent, sues her former employer, Bankers Life and Casualty Company, in a putative class action. Walker alleges Bankers Life intentionally misclassified its insurance agents as independent contractors rather than employees and failed to pay employee benefits in violation of California **[*2]** law. Bankers Life moves to dismiss or to strike the California law claims, arguing that choice of law rules require the application of Illinois law. For the reasons set forth below, the motion is granted in part.

**BACKGROUND**

The following facts are derived from the complaint. Walker, a California resident, was employed as an insurance agent from 1998 to 2006 by Bankers Life, an Illinois insurance company. Compl. at PP 1-2. The relationship between Walker and Bankers Life was governed by a form contract, which new agents are required to sign when they begin employment. *Id.* at P 9. The contract classifies insurance agents as independent contractors, and expressly disclaims an employer-employee relationship. *Id.,* Ex. A at P 4. The contract sets forth agents' authority and the limits on their authority. *Id.* at P 9. It includes a choice of law clause, providing that "[t]his Contract shall be construed in accordance with the laws of the State of Illinois exclusive of choice of laws provisions." *Id.,* Ex. A at P 25. The contract also includes a clause that provides "[v]enue for any action between the parties arising under this Contract shall be in a court located **[*3]** in Chicago, Cook County, Illinois." *Id.*

During Walker's entire employment, Bankers Life classified her as an independent contractor. Compl. at P 1. Bankers Life did not provide benefits to its independent contractors, such as unemployment and disability insurance, social security, medical insurance, and 401(k) contributions. *Id.* at P 11. These benefits were provided to Bankers Life employees. *Id.*

Walker filed a class action complaint in California Superior Court on September 18, 2006. Walker alleges that even though she and other insurance agents were classified as independent contractors, they should have been classified as employees because Bankers Life retained and exercised a high degree of control over their

Case 1:08-cv-04091  Document 14-3  Filed 08/11/2008  Page 2 of 4

Page 2
2007 U.S. Dist. LEXIS 22818, *

work. Compl. at P 10. She alleges Bankers Life intentionally misclassified insurance agents as independent contractors to avoid paying benefits provided to employees. *Id.* at P 11. The complaint sets forth five purported claims: (1) preliminary and permanent injunction pursuant to *§ 3422 of the California Civil Code* and *§ 526 of the California Code of Civil Procedure*; (2) misclassification of independent contractors; (3) failure to indemnify agents for their **[*4]** expenses under *§ 2802 of the California Labor Code*; (4) conversion of agents' employee benefits in violation of *§§ 3336* and *3294* of the California Civil Code; and (5) unfair business practices in violation of the *California Business and Professions Code, §§ 17200 et seq. Id.* at PP 22-49. Walker seeks injunctive relief, payment of benefits, reimbursement of expenditures, compensatory and punitive damages for conversion, and restitution. *Id.* at 19.

Bankers Life removed the action to the United States District Court for the Central District of California on October 18, 2006. Bankers Life then moved to dismiss for improper venue or, in the alternative, to transfer venue. On November 20, 2006, the case was transferred to this court based on the contract's venue selection clause.

This court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). CAFA grants district courts original jurisdiction over class actions if the matter in controversy exceeds $ 5,000,000 and any member of the plaintiff class is a citizen of a state different from any defendant. *28 U.S.C. § 1332(d)(2)*. Walker alleges the class includes at **[*5]** least 500 agents with individual damages of less than $ 75,000.00. Compl. at PP 14, 19(a). Aggregating individual claims, the amount in controversy exceeds $ 5,000,000. *28 U.S.C. § 1332(d)(6)*. Walker alleges she is a resident of California, and Bankers Life is domiciled in Illinois. Compl. at PP 1-2. These allegations are defective because citizenship may differ from residence. *Macken v. Jensen, 333 F.3d 797, 799 (7th Cir. 2003)*. However, the error does not require dismissal. *Id.* Bankers Life concedes it is an Illinois corporation, and Walker is a citizen of California. *See* Notice of Removal at PP 9, 11-12 (Dkt. No. 23-1 (Dec. 14, 2006)); *28 U.S.C. § 1332(c)(1)*.

## DISCUSSION

### I. Legal Standards

Bankers Life moves to dismiss the complaint because the contract's choice of law clause requires that the complaint be plead under Illinois law, not California law. Alternatively, Bankers Life moves to strike the complaint because the choice of law clause renders the California claims immaterial and impertinent under Illinois law.

### A. Motion to Dismiss

A motion to dismiss challenges the sufficiency **[*6]** of the complaint. Dismissal is warranted only if no relief could be granted under any set of facts that could be proved consistent with Walker's allegations. *Cler v. Ill. Educ. Ass'n, 423 F.3d 726, 729 (7th Cir. 2005)* (quoting *DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000))*. All well-pleaded allegations are accepted as true and all reasonable inferences are drawn in her favor. *Cler, 423 F.3d at 729*.

Any written instrument attached to a complaint is considered a part of the complaint. *Fed. R. Civ. P. 10(c)*. Walker's contract is attached to the complaint. *See* Compl., Ex. A. The contract may be considered on a motion to dismiss. *Moranski v. Gen. Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005)*.

Walker requests that the court consider additional facts in deciding the motion. She alleges she performed work for Bankers Life only in California, and never traveled to Illinois; she did not deal with Bankers Life employees in Illinois. *See* Pl. Resp. at 3 and Ex. A. She alleges Bankers Life did not give her the opportunity to reject or negotiate any part of her contract. **[*7]** *Id.* These additional facts were included in Walker's declaration filed with her response to Bankers Life's motion to transfer venue. The additional facts are consistent with the allegations in her complaint. *Help At Home Inc. v. Med. Capital, L.L.C., 260 F.3d 748, 752-53 (7th Cir. 2001)* (plaintiff may add facts by affidavit or brief to defeat a motion to dismiss if the facts are consistent with the allegations in the complaint). Therefore, Walker's declaration may be considered in deciding the motion to dismiss.

### B. Motion to Strike

*Fed. R. Civ. P. 12(f)* provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Bankers Life must show that Walker's allegations are so unrelated to her claims that they are "void of merit and unworthy of any consideration," and unduly prejudicial. *Cumis Ins. Soc. v. Peters, 983 F. Supp. 787, 798 (N.D. Ill. 1997)*. A motion to strike is generally disfavored. *Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)*.

### II. Choice of Law

**[*8]** A federal court resolving a diversity claim must apply state law. *Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)*. The state law to be applied is that of the forum state on resolving conflicts of law. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987)*.

Case 1:08-cv-04091   Document 14-3   Filed 08/11/2008   Page 3 of 4

Page 3
2007 U.S. Dist. LEXIS 22818, *

When a case is transferred, the court generally is obligated to apply the law of the transferor forum. *Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)*. However, in an action improperly filed in the transferor court, the transferee court should apply its own state's choice of law rules rather than the transferor state's. *Koutsoubos v. Casanave, 816 F Supp. 472, 475 (N.D. Ill. 1993)*. Illinois choice of law rules control whether Illinois or California law applies to Walker's claims because venue was improper in the United States District Court for the Central District of California.

A contract's choice of law clause is applied to disputes that arise from a valid contract. *Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996)*. However, choice of law clauses do not govern tort claims unless it is clear this **[*9]** was the parties' intent. *Kuehn v. Childrens Hosp., 119 F.3d 1296, 1302 (7th Cir. 1997)*. A two part analysis applies to determine the breadth of the contractual choice of law clause. *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship, Nos. 02 C 0978 and 02 C 3436, 2003 U.S. Dist. LEXIS 806, 2003 WL 151929, at *13 (N.D. Ill. Jan. 21, 2003)* (Manning, J.) (citing *Medline Indus. Inc. v. Maersk Med. Ltd., 230 F. Supp. 2d 857, 862-63 (N.D. Ill. 2002))*. First, the language of the clause is examined to determine whether the parties intended it to govern all claims between them. *Medline, 230 F. Supp. 2d at 863*. Second, the court determines whether plaintiff's claims are dependent on the contract, and therefore subject to the choice of law clause. *Id.*

If the contract's choice of law clause does not govern Walker's tort claims, Illinois' "most significant relationship test" applies to determine the appropriate law. *Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 503-04 (7th Cir. 1998)*. Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and the parties. **[*10]** *Id. at 504*.

**A. Choice of Law Clause**

The language of the contract's choice of law clause does not indicate the parties intended it to govern all claims between them. The clause provides that "[t]his contract shall be construed in accordance with the laws of the state of Illinois exclusive of choice of laws provisions." Compl., Ex. A at P 25. The clause does not mention claims or disputes. Its language contrasts with more broadly stated provisions that apply to all claims "arising out of" the contract. *See, e.g., Omron Healthcare, Inc. v. Maclaren Exp. Ltd, 28 F.3d 600, 603 (7th Cir. 1994)* ("arising out of" language in forum selection clause applied to all disputes depending on construction of the contract).

The choice of venue clause, which immediately follows the choice of law clause, contains broader language: "[v]enue for *any action between the parties arising under this contract* shall be in a court located in Chicago, Cook County, Illinois." Compl, Ex. A at P 25 (emphasis added). The contract's indemnification clause uses even broader language, providing that the insurance agent shall indemnify Bankers Life for any claims or **[*11]** losses "in connection therewith, arising out of or resulting from" default or negligent performance of the agents's contractual obligations. *Id.,* Ex. A at P 26. The narrower language of the choice of law clause does not reflect a clear intent that all claims, including tort claims, be governed by Illinois law. *Medline, 230 F. Supp. 2d at 863*.

**B. Walker's Claims**

**1. Preliminary and Permanent Injunction**

In Count I, Walker seeks a preliminary and permanent injunction to prevent Bankers Life from misclassifying insurance agents as independent contractors. Count I is not supported by a substantive underlying claim. Injunction is an equitable remedy, not a separate cause of action. *Shell Oil Co. v. Richter, 52 Cal. App. 2d 164, 168, 125 P.2d 930 (Cal. Ct. App. 1942)*. At a hearing on the motion to dismiss, Walker's counsel agreed that the injunctive relief claim was not an independent claim, but rather a remedy for other claims. *See* Transcript of March 14, 2007 hearing at 4:1-4. Dkt. No. 62-2 (March 16, 2007). The claim for injunctive relief (Count I) is dismissed without prejudice.

**2. Misclassification**

Count II is styled as a claim for **[*12]** misclassification. Walker alleges Bankers Life intentionally misclassified its insurance agents as independent contractors to avoid paying employee benefits. Compl. at P 28. Walker fails to supply persuasive authority supporting her position that misclassification is an independent cause of action under California law. Misclassification is a factual allegation typically underlying a claim arising from a statutory or regulatory violation. *See Sav-On Drug Stores, Inc. v. Sup. Ct., 34 Cal. 4th 319, 324, 17 Cal. Rptr. 3d 906, 96 P.3d 194 (Cal. 2004)* (underlying each cause of action for violation of California labor and unfair competition statutes were factual allegations that defendant misclassified employees as exempt from overtime laws). Walker's separate claim for misclassification (Count II) is dismissed without prejudice.

**3. Statutory Violations and Conversion**

In Counts III, IV and V, Walker alleges violations of *§ 2802 of the California Labor Code* and *§ 17200 of the*

*California Business and Professions Code*, and liability for damages, interest and penalties under *§ 3336* (conversion) and *§ 3294* (exemplary damages) of the California Civil Code. Counts III, IV and V are tort claims. *Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 292, 253 Cal. Rptr. 97, 763 P.2d 948 (Cal. 1988)* **[*13]** (violation of a legal duty imposed by statute is a tort); *Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003)* (setting forth elements for the tort of conversion).

Bankers Life does not dispute that Counts III, IV and V are tort claims, but argues they arise from the contract and thus are subject to the contract's choice of law clause. Bankers Life interprets Walker's claims as breach of contract claims. *See* Transcript of March 14, 2007 hearing at 9:14-25 ("we have briefed the issue as if misclassification [and indemnification, conversion, and unfair business practices] is a breach of contract; in other words, the claim is: You breached the contract because you didn't treat me like an independent contractor, as the contract says that you should"). Dkt. No. 62-2 (March 16, 2007). Bankers Life mischaracterizes Walker's claims; she does not allege breach of contract claims.

Bankers Life contends even if Walker's tort claims do not arise from the contract, they are dependent on the contract and therefore governed by the choice of law clause. Bankers Life argues Walker's claims are based on construction of the contract because the alleged misclassification is on **[*14]** the face of the contract and arises from the parties' understanding of their relationship at the time they entered into the contract. A tort claim is dependent on the contract if the claim (1) alleges a wrong based on interpretation and construction of the contract; (2) is closely related to the parties' contractual relationship; and (3) could not exist without the contractual agreement. *Birnberg, 2003 U.S. Dist. LEXIS 806, 2003 WL 151929, at *14* (internal quotations and citations omitted).

Walker's claims are not dependent on the contract. She does not allege a wrong based on interpretation or construction of the contract. She alleges she was an employee, not an independent contractor. Under Illinois and California law, the determination of whether a worker is an employee or an independent contractor is based on a multi-factor examination of the employment relationship. *Borello & Sons, Inc. v. Dept. of Indus. Relations, 48 Cal. 3d 341, 350-51, 256 Cal. Rptr. 543, 769 P.2d 399 (Cal. 1989)*; *Mazzei v. Rock N Around Trucking, Inc., 246 F.3d 956, 963 (7th Cir. 2001)*. Contractual language is not determinative, nor is it listed as a factor. *Borello, 48 Cal. 3d at 351*; *Mazzei, 246 F.3d at 965*. **[*15]** Walker's claims are not related to the parties' contractual relationship, but rather involve the parties actual relationship. Her claims could exist without the contract. In the absence of the contract, Walker could allege that Bankers Life misclassified her as an independent contractor to avoid payment of benefits and expenses. The contract's choice of law clause does not govern her tort claims.

To determine the applicable law, the court must apply a most significant relationship test. *Fredrick, 144 F.3d at 503-04*. A court determines whether Illinois has the more significant relationship by examining (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile of the parties; and (4) the place where the relationship of the parties is centered. *Id. at 504*. The court also considers the interests and public policies of potentially concerned states. *Id.* The injury occurred in California, where putative class members were allegedly denied benefits. Therefore, California law applies unless Illinois has a more significant relationship with the occurrence and the parties. *Id.* The conduct allegedly causing **[*16]** the injury occurred in California. The relationship between the parties is centered in California; Walker alleges she had no contact with Bankers Life employees in Illinois. Pl. Resp. at 3 and Ex. A. California has a public policy interest in the case because a putative class of 500 insurance agents allegedly were injured there. Compl. at P 14. Illinois does not have a more significant relationship to the claims. Therefore, California law applies to Counts III, IV and V.

**CONCLUSION**

Counts I and II of the complaint are dismissed without prejudice. Diversity jurisdiction remains over the remaining counts because dismissal of Counts I and II does not affect the amount in controversy.

March 28, 2007

Suzanne B. Conlon

United States District Judge